No. 22-3009

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

**UNITED STATES OF AMERICA**,
Plaintiff-Appellee,

v.

**STEVEN M. HOHN**,
Defendant-Appellant.

_____

On Appeal from the United States District Court
for the District of Kansas
The Honorable Julie A. Robinson, U.S. Chief District Judge
D.C. Nos. 12-cr-20003, 19-cv-2082, 19-cv-2491

_____

## BRIEF OF APPELLEE

_____

DUSTON J. SLINKARD
United States Attorney

JAMES A. BROWN
Assistant United States Attorney
District of Kansas
444 SE Quincy, Room 290
Topeka, Kansas 66683-3592
Phone: (785) 295-2850
Kan. S.Ct. No. 14254
Attorney for Plaintiff-Appellee

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iv

PRIOR OR RELATED APPEALS........................................................ vii

INTRODUCTION ................................................................................1

STATEMENT OF THE CASE ..............................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................16

SUMMARY OF ARGUMENT ............................................................16

ARGUMENT AND AUTHORITIES...................................................19

I.    THE DISTRICT COURT DID NOT ERR IN RULING THAT HOHN
      FAILED TO PROVE THE ELEMENTS OF HIS SIXTH AMENDMENT
      CLAIM. ..................................................................................19

      Issue Raised and Ruled On ...............................................19

      Standard of Review ...........................................................23

      Discussion ........................................................................23

II.   THE DISTRICT COURT DID NOT ERR IN RULING THAT THE
      GOVERNMENT PROVED HOHN WAIVED HIS SIXTH
      AMENDMENT RIGHT...........................................................50

      Issue Raised and Ruled On ...............................................50

      Standard of Review ...........................................................51

      Discussion ........................................................................51

CONCLUSION ...................................................................................................57

STATEMENT REGARDING ORAL ARGUMENT ............................................57

CERTIFICATE OF COMPLIANCE .....................................................................58

CERTIFICATIONS ..............................................................................................59

# TABLE OF AUTHORITIES

## Cases

*Bates v. Dep't of Corrections*, 81 F.3d 1008 (10th Cir. 1996) ...............................31

*Berghuis v. Thompkins*, 560 U.S. 370 (2010).........................................................52

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)..........................................................28

*Butler v. McKellar*, 494 U.S. 407 (1990)................................................................46

*Daniels v. United States*, 254 F.3d 1180 (10th Cir. 2001).....................................45

*Edwards v. Vannoy*, --- U.S. ----, 141 S. Ct. 1547 (2021)………………45, 46, 48

*Geders v. United States*, 425 U.S. 80 (1976).........................................................42

*Hoffa v. United States*, 385 U.S. 293 (1966) ......................................................9, 30

*In re Grand Jury, Proc.*, 616 F.3d 1172 (10th Cir. 2010) .....................................33

*In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179 (10th Cir. 2006) ................. 33, 40

*Johnson v. Zerbst*, 304 U.S. 458 (1938) .................................................... 51, 52, 55

*Lambrix v. Singletary*, 520 U.S. 518 (1997)..........................................................46

*Montejo v. Louisiana*, 556 U.S. 778 (2009).................................................... 18, 52

*Montgomery v. Louisiana*, 577 U.S. 190 (2016) ............................................. 44, 46

*Moran v. Burbine*, 475 U.S. 412 (1986) ...............................................................51

*North Carolina v. Butler*, 441 U.S. 369 (1979) ......................................... 52, 54, 55

*Parke v. Raley*, 506 U.S. 20 (1992) ............................................................... 52, 55

*Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181 (10th Cir. 1995)................................30

*Saffle v. Parks*, 494 U.S. 484 (1990) ....................................................................46

*Shillinger v. Haworth*,
    70 F.3d 1132 (10th Cir. 1995)........................... 4, 5, 12, 14, 24, 27, 30, 32, 37, 40

*Strickland v. Washington*, 466 U.S. 668 (1984) ......................................................26

*Teague v. Lane*, 489 U.S. 288 (1989)…………………………………………17, 45

*United Food & Commercial Workers Union, Local 1564 of N.M. v.*
   *Albertson's, Inc.*, 207 F.3d 1193 (10th Cir. 2000) ...............................................38

*United States v. Bell*, 776 F.2d 965 (11th Cir. 1985).......................... 32, 41, 46, 48

*United States v. Cronic*, 466 U.S. 648 (1984) ................................................ 26, 43

*United States v. Dago*, 441 F.3d 1238 (10th Cir. 2006) .........................................30

*United States v. Eye*, 2008 WL 1701089 (W.D. Mo. Apr. 9, 2008)......................35

*United States v. Faulkner*, 439 F.3d 1221 (10th Cir. 2006) ............................ 35, 54

*United States v. Footman*, 215 F.3d 145 (1st Cir. 2000).......................................36

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006).........................................26

*United States v. Guillen*, 995 F.3d 1095 (2021) ...................................................28

*United States v. Hatcher*, 323 F.3d 666 (8th Cir. 2003) ................................. 34, 41

*United States v. Hohn*, 606 F. App'x 902 (10th Cir. 2015).....................................4

*United States v. Johnson*, No. 11-cr-00501,
   2016 WL 297451 (D. Utah Jan. 22, 2016) ..........................................................33

*United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952) .....................38

*United States v. Leffler*, 942 F.3d 1192 (10th Cir. 2019) ......................................45

*United States v. Lentz*, 419 F. Supp. 2d 820 (E.D. Va. 2005) ...............................35

*United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011).......................................35, 41

*United States v. Melvin*,
   650 F.2d 641 (5th Cir. Unit B 1981)……………………...22, 32, 33, 41, 47, 49

*United States v. Morrison*, 449 U.S 361 (1981). ........................... 24, 26, 27, 42, 43

*United States v. Orange*, 447 F.3d 792 (10th Cir. 2006).................................. 22, 51

*United States v. Ruiz*, 536 U.S. 622 (2002) ...........................................................57

*United States v. Tsarnaev*, --- U.S.----, 142 S. Ct. 1024 (2022) .............................28

*United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996).........................................36

*United States v. Weatherford*, 429 U.S. 515 (1977) ................. 25, 26, 29, 31, 42, 46

*Watson v. Albin*, 2008 WL 2079967 (N.D. Cal. May 12, 2008) .............................35

*Webster v. Fall*, 266 U.S. 507 (1925) .....................................................................38

*Welch v. United States*, 578 U.S. 120 (2016) ..........................................................45

*Wong-Sun v. United States*, 371 U.S. 471 (1963).....................................................9

## Rules

Fed. R. Crim. P. 52(a) ..............................................................................................29

## Other Authorities

*Government Intrusions Defense Camp:  Undermining the Right to Counsel*,
    97 Harv. L. Rev. 1143 (1984)..............................................................................33

*Michael Abramowicz and Maxwell Stearns Defining Dicta*,
    57 Stan. L.Rev. 953 (2005) ..................................................................................30

# **PRIOR OR RELATED APPEALS**

*See* Def.'s Br. at p. ix (listing related cases).

# INTRODUCTION

More than five years after he was convicted by a jury and sentenced, Petitioner Steven M. Hohn filed a 28 U.S.C. § 2255 motion asking the court for a windfall: vacatur of his conviction and dismissal of the charges against him with prejudice, or a 50% reduction of his low-end-of-the-Guidelines sentence, even though he did not identify any statutory or constitutional violation that had any effect on his conviction or sentence. He claimed the government violated his Sixth Amendment right to the effective assistance of counsel by obtaining a recording of a telephone call that he made to his attorney on April 23, 2012, on a recorded telephone line at a pretrial detention facility. He admits that he understood at the time he made the call that it was subject to monitoring and recording, that he could have (but chose not to) make a confidential call to his attorney by following the facility's procedures for doing so, and that the call recording could be used to maintain security at the facility and to protect the public—quintessential government and law enforcement functions. He alleged no demonstrable injury or prejudice from the alleged intrusion.

The court denied Hohn's claim on the basis that he failed to establish that he had a reasonable expectation of confidentiality with respect to the call and therefore could not establish one of the elements of his Sixth Amendment claim; namely, that it was a protected attorney-client communication. As a result, the

court found that the Sixth Amendment never even applied to the call, but if it did, Hohn waived his Sixth Amendment right because he knowingly and voluntarily disclosed the content of his call to a third party—the government by way of the recorded line.

On appeal, Hohn does not allege that he suffered demonstrable prejudice from the alleged intrusion or that there was even a realistic possibility of such prejudice. He does not argue that the call was protected by the attorney-client privilege. He does not claim that he did not know that the call was subject to monitoring and recording. He does not argue that he had a reasonable, *factual* expectation of confidentiality with respect to the call. Rather, he suggests that all of these things are irrelevant to his Sixth Amendment claim because his communications on the call were "*inherently*" confidential for Sixth Amendment purposes, even though they were not *actually* confidential because he knowingly disclosed his communications to the government. Hohn's theory defies both logic and law. As relevant here, the Sixth Amendment protects a defendant's right to the effective assistance of counsel. It does not operate to invalidate a defendant's criminal conviction and sentence when he chooses to communicate with his attorney on a jailhouse telephone line that he knows is monitored and recorded instead of requesting a confidential call when he is able to do so.

## STATEMENT OF THE CASE

### A.    Overview

Hohn and others were indicted on January 25, 2012, on drug and gun

charges.  R1.29-37.[1]  Hohn was charged with conspiring to possess with the intent

to distribute and distribute methamphetamine, in violation of 21 U.S.C. § 846

(Count 1); and two counts of possessing a firearm while being an unlawful user of

a controlled substance, in violation of 18 U.S.C. § 922(g)(3) (Counts 13 & 14).

R.1.29-30, 35.  Hohn's codefendants included Robert Baitey, Michael Quick,

Tracy Rockers, Kerry Randall, and others.  R1.29.  The case was prosecuted by

Assistant United States Attorney (AUSA) Terra Morehead, R.2.69, and the lead

investigator was Deputy Perry Williams of the Johnson County, Kansas Sheriff's

Office, R.2.1125.

Upon being arrested, Hohn was detained at Corrections Corporation of

America (CCA, now CoreCivic) from January 27, 2012, to March 28, 2014.

R.2.69.  Initially, Hohn was represented by Tim Burdick of the Federal Public

---

[1]    The government cites to the record by referring to the volume of the record
followed by the page number of that volume.  As to volumes 1, 2, and 3,  the
government cites to the page number in the <u>lower-right</u> corner of the page.  As to
supplemental volumes 1 and 2, the government cites to the page number in the
<u>upper-right</u> corner of the page (in green), which this Court supplied upon filing of
the documents.  For example, page 1729 of volume one would be cited as
"R.1.1729." Page 52 of supplemental volume one would be cited as
"Supp.R.1.52."

Defender's Office (FPD), but on April 23, 2012, the court appointed James Campbell as substitute counsel. R.2.1730. On that same day, Hohn made a six-minute call to Campbell from CCA that was recorded and later provided to law enforcement officers in response to a Drug Enforcement Administration (DEA) administrative subpoena for jail calls made by Hohn between April 19, 2012, and April 23, 2012. Supp.R.2.136; R.2.1141, 1730, 1750-51. Williams subpoenaed Hohn's calls after one of Hohn's codefendants told Williams about the disappearance and death of Gregory Price, including details about Hohn's role in Price's disappearance. R.2.1750; R.2.1126-41. The April 23, 2012 call is the only call upon which Hohn bases his instant Sixth Amendment intentional-intrusion claim. R.3.306-07.

On June 5, 2013, a jury found Hohn guilty on all charges. R1.46. On January 28, 2014, Hohn was sentenced to 360 months in prison and 5 years of supervised release. R1.48-51. Hohn filed a direct appeal and this Court affirmed. *United States v. Hohn*, 606 F. App'x 902 (10th Cir. 2015) (unpublished).

On February 12, 2019, Hohn filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. R1.2650. He alleged that "the government violated [his] Sixth Amendment right to counsel by obtaining protected attorney-client communications, without notice to counsel, the courts, or [Hohn himself]." *Id*. In support of his claim, he relied exclusively, R.1.2661, on *Shillinger v.*

*Haworth*, 70 F.3d 1132 (10th Cir. 1995), where this Court held that "when the state

becomes privy to confidential communications because of its purposeful intrusion

into the attorney-client relationship and lacks a legitimate justification for doing so,

a prejudicial effect on the trial process must be presumed," and that "such an

intrusion must constitute a *per se* violation of the Sixth Amendment," to which

harmless error analysis does not apply. *Id*. at 1142. Hohn asked the court either to

vacate his judgment and dismiss his case with prejudice, or, alternatively, to reduce

his sentence to 180 months' imprisonment. R.1.2671.

### B. Hohn Consents to the Monitoring and Recording of His Jail Calls

Upon arriving at CCA on January 27, 2012, Hohn received numerous

warnings that his telephone calls from CCA—including calls to his attorneys—

were subject to monitoring or recording. R.2.1011-20. He consented to that

recording. R.2.1012-13. And he never requested an unmonitored attorney-client

telephone call, even though he understood that he could have done so and that the

burden was on him to do so. R.2.1017-20.

More precisely, Hohn received the following warnings that all of his calls

were subject to monitoring and recording, but that he could make a confidential

call to his attorney if he followed certain protocols:

- Hohn received and signed a consent-to-monitoring form advising that "[CCA] reserves the authority to monitor (this includes recording) conversations on any telephone located within its institution . . . to preserve the security and orderly management of the institution and to

protect the public. An inmate's use of institutional telephones constitutes consent to this monitoring. A properly placed phone call to an attorney is not monitored. You must contact you[r] unit team to request an unmonitored call." R.2.77; Supp.R.2.21.

- Hohn received CCA's Inmate/Resident Handbook (Nov. 7, 2011 ed.), R.2.73; Supp.R.2.20; Supp.R.2.17(## 3, 4); Supp.R.2.22. The handbook advised that "[t]elephone conversations may be monitored and are recorded for security reasons," that Hohn could speak to his attorney without recording "to ensure Attorney-Client privilege" by having his attorney send a fax to CCA with the attorney's contact information and signature. R.2.79; Supp.R.2.30 (XIII ##8-9). The handbook advised: "<u>IT IS YOUR RESPONSIBILITY TO ENSURE THAT YOUR ATTORNEY IS AWARE OF THIS PROCEDURE; THEIR TELEPHONE CALLS ARE SUBJECT TO BEING RECORDED IF THEY DO NOT REQUEST THEY BE RESTRICTED</u>." R.2.79; Supp.R.2.30 (XIII #9).

- In the room where Hohn made his calls, there were signs on the telephones and the walls stating that calls were subject to monitoring and recording. R.2.1023-24; Supp.R.2.106-07 (photos).

- On Hohn's April 23, 2012 call to his attorney, there was a verbal preamble, which stated: "This is a call from an inmate at CCA-Leavenworth Detention Center. This call is subject to recording and monitoring." R.2.1747.

Hohn admitted, either at the evidentiary hearing or in sworn statements that:

- He signed the consent-to-monitoring form, read it before he signed it, and signed it before he made the April 23, 2012 call, Supp.R.2.17 (#10); R.2.1011; Supp.R.2.21.

- He knew that he could make an unmonitored call by contacting his unit team manager, R.2.1015, but did not contact his unit team manager to make an unmonitored call when he made the April 23, 2012 call, R.2.1038-39.

- Nothing prevented him from contacting his unit team to request an unmonitored call, but he never did so.  R.2.1015

- He received the handbook, R.2.1016, was familiar with its contents, R.2.1018, and read it "in its entirety" during his first week at CCA, which began after he arrived on January 27, 2012, R.2.1018-19.

- From the advisement in the handbook, he understood the protocol he could use to make an unmonitored attorney-client call, and he knew that CCA put the burden on him to notify his attorney of this protocol. R.2.1019-20.

- He knew that his attorney-client calls were subject to recording or monitoring if he did not follow the protocol, and he never followed the protocol.  R.2.1020; *see also* Supp.R.2.17 (#14).

- He was aware of the signs on the walls of the phone room and on the phones themselves, *see* Supp.R.2.106-07 (photos), which advised that calls were subject to monitoring and recording, R.2.1023-24; he knew from the signage that his calls were being recorded, R.2.1025; he made the April 23, 2012 call from this room, R.2.1038, and he believed that the written warning and signs placed on or near the telephones applied to attorney-client calls, Supp.R.2.18 (#16).

- CCA's recorded preamble warning was played on the April 23, 2012 call, which advised that the call was subject to recording and monitoring.  R.2.1039-40.

- When he placed the call, he believed the recorded preamble warning applied to attorney-client calls.  Supp.R.2.18 (#15).

- He knew from the preamble warning that, even before he uttered his first word on the call, it was subject to monitoring and recording. R.2.1040.

- He spoke to his attorney on the April 23, 2012 call with full knowledge that the call would be recorded and monitored, even though he knew that CCA had procedures in place to make an unmonitored attorney-client call.  R.2.1040-41.

Hohn further testified that, while he believed Securus, the company that ran the phone system for CCA, recorded his calls to his attorney, he did not think it distributed the calls outside of Securus or CCA, R.2.1001-02, but this was just his assumption, R.2.1021. Even so, he conceded that one of CCA's purposes in monitoring and recording calls was to protect the public, and that an inmate conversing about the disposal of a dead body relating to a homicide investigation would be relevant to public safety. R.2.1014. He further acknowledged that if an inmate and a person on the outside were planning to kill a witness, "the institution would definitely want to contact law enforcement and go through the proper channels to put that into discovery." R.2.1050. Hohn's trial attorney, James Campbell, testified that Hohn never told him about CCA's protocols for ensuring attorney-client privilege, and never asked him to send CCA a fax requesting unmonitored calls. R.2.1082.

## C.     Contents of the April 23, 2012 Call

When Hohn spoke with Campbell on April 23, 2012, approximately 13 months before his trial, Campbell had just been appointed on Hohn's case. R.2.1037-38, 1085. Neither Hohn nor Campbell had seen the case-related discovery before the call. R.2.1038, 1085.

The court reviewed the call recording *in camera*. R.2.1754. The government had argued that it needed to review the recording for evidence relevant

to whether Hohn suffered prejudice from the alleged intrusion, R.3.1107, and whether the communications were protected, R.3.1112, but the court denied the government's request for various reasons, including that prejudice is presumed under *Shillinger*'s rationale, R.3.1107-18. The call lasted six minutes. R.3.306. According to the court, Hohn and his attorney discussed matters relating to legal advice or strategy, including Hohn's desire to have a trial, his criminal history, what he believed the evidence against him to be and the problems with that evidence, concern about his truck being impounded, and the general way that they would proceed to meet and discuss matters going forward. R.2.1754.[2]

---

[2]    Before trial, the government obtained several recordings of Hohn's calls to non-attorney third parties, stored on a compact disc labeled "N-2," which contained calls Hohn placed from CCA between February 1 and February 20, 2012. *See* R.2.319. In these calls, Hohn spoke about the witnesses against him, his desire to be released pretrial; that he might take a plea to gun charges if the conspiracy count was dropped; that he was not guilty; about the gun found at Kerry Randall's property that was charged in Count 13; that he would own up to the gun charged in Count 14; that he wanted discovery and grand jury notes; that he wanted to go to trial; that he thought the evidence against him was weak; that he discerned a legal issue with the placement of a GPS tracker on his vehicle during the investigation; and that he was not going to be a snitch. R.2.1026-1035. The government sought to compare Hohn's disclosures in these calls with the disclosures he made in his attorney-client call to show that the N-2 calls constituted an independent source of the evidence Hohn said the government obtained from his call. R.2.1033-34. *See Hoffa v. United States*, 385 U.S. 293, 308-09 (1966) (applying tainted-fruit analysis of *Wong-Sun v. United States*, 371 U.S. 471 (1963) to Sixth Amendment intentional-intrusion violation) (argued at R.2.1628-29).

**D.     How the Government Obtained the Call**

The government obtained three batches of Hohn's calls from CCA during his prosecution.  R.2.1749.  The second batch contained the April 23, 2012 call at issue.  R.2.1751.

### 1.     First Batch

On February 21, 2012, pursuant to a DEA administrative subpoena, Deputy Williams obtained the first batch of Hohn's calls for the time period between January 25, 2012, to February 21, 2012.  R.2.1750; Supp.R.2.118.  Williams obtained Hohn's calls as part of an investigation he was conducting involving a potential threat to a government witness, and pursuant to this investigation he also requested CCA calls and visitor information of several of Hohn's codefendants.  Supp.R.2.118; R.2.1750; *see also* R.2.1146-48.  None of the recordings provided by CCA in February 2012 included calls from Hohn to his then-attorney, Tim Burdick.  Supp.R.2.141(#4).

### 2.     Second Batch Containing the April 23, 2012 Call

On April 24, 2012, pursuant to another DEA administrative subpoena, Williams obtained the second batch of Hohn's calls for the time period between April 19, 2012, to April 23, 2012.  R.2.1750; Supp.R.2.136, 147-50.  He also obtained calls for codefendants Michael Quick and Tracy Rockers.  R.2.1141.  This subpoena was issued after Quick told Williams about the disappearance and

death of Gregory Price, who had been identified as being a missing person since around December 2010, R.2.1134-36, including details about Hohn's role in the disappearance, R.2.1750; R.2.1126-41.

More particularly, during a proffer meeting on March 9, 2012, one of Hohn's codefendants, Robert Baitey, told Williams that "HOHN was concerned" about Quick "cooperating with the government as QUICK had knowledge of a possible murder HOHN had been involved in." Supp.R.1.30.¶16. Baitey also told Williams that Hohn said "anyone who snitches on [him] he will kill them when he gets out of prison." *Id*. On March 22, 2012, Baitey told Williams that "HOHN told [him] about putting a body into an appliance to get rid of it." Supp.R.1.36.¶23. Baitey also told the deputies that Hohn said a woman who had worn a wire "was going to end up in a trunk when he (HOHN) gets out." *Id*. ¶ 25.

On April 19, 2012, Quick told Williams about the disappearance and death of Price, including Hohn's role in Price's disappearance. Supp.R.1.52-54.¶¶ 18-31. Quick told deputies that around November 2010, he and Hohn were standing outside his residence when another codefendant, Tracy Rockers, told them that Price had died inside the residence, Supp.R.1.52-53.¶¶ 18-21; that Hohn was involved in deciding not to call the police and instead to wrap Price's body in a tarp and stuff Price's body into a refrigerator, Supp.R.1.53.¶¶ 21, 23; that Hohn provided the tarp, helped wrap Price's body in the tarp, helped empty the

refrigerator, and helped stuff Price's body into the refrigerator, *id*. ¶¶ 23-26; and

that Hohn and Quick loaded the refrigerator with Price's body in it in the back of

Hohn's truck and dumped Price's body in the refrigerator on a property at 103rd

Street and Kill Creek Road in De Soto, Kansas, Supp.R.1.53-54.¶¶ 28-29.  Later

that day, sheriff's deputies found Price's decomposing body on that property,

inside a refrigerator.  Supp.R.2.129,133-35; R.2.1134.  The next day, Williams

applied for and received a search warrant for Hohn's 1997 F-150 Ford truck for

trace evidence.  R.2.1136; Supp.R.2.130-31.

Deputies also began obtaining jail calls in connection with the Price

homicide investigation.  On April 23, 2012, Williams requested that Deputy

Christopher Farkes, a Task Force Officer with the DEA, use a DEA administrative

subpoena to obtain the CCA jail calls of Hohn, Rockers and Quick, for the time

period beginning April 19, 2012.  R.2.1139-40.  Williams requested their jail calls

because "information travels very quickly around [CCA]," R.2.1143, and he

wanted to capture any additional information, evidence, or leads in connection with

Price's homicide, R.2.1143-45.  During Williams's career in law enforcement, jail

calls had provided valuable information in furtherance of investigations.  R.2.1146.

Williams testified that during his investigation of Hohn and his

codefendants, he did not hear any calls between Hohn and a lawyer or anyone who

sounded like a lawyer.  R.2.1145.  He further testified that nobody else working on

the case ever told him that they heard a call during which Hohn was speaking to a lawyer or someone who sounded like a lawyer. *Id*. Williams did not request Hohn's calls for the purpose of listening to conversations between Hohn and his attorney. *Id*. When Williams requested that TFO Farkes obtain Hohn's jail calls, he did not think it was very likely that the jail calls would include calls to Hohn's attorney. *Id*. at 1145-46.

On April 24, 2012, a DEA Task Force Officer collected the subpoenaed materials, which included a CD marked as N-8, which contained a single call—the April 23, 2012 call that is at issue in this case. R.2.1751. This call is not in the record on appeal. The call detail records show that Hohn made four calls during this time period, all on April 23, 2012. Supp.R.2.74. Three of the calls were to FPD toll-free telephone numbers, and one call was to Campbell. *Id*.; R.2.551. Only the six-minute call to Campbell was recorded; the calls to FPD were not recorded because the toll free numbers were marked as privatized. R.2.551.[3]

### 3. Third Batch

On May 24, 2013, in the midst of Hohn's trial, AUSA Morehead issued a trial subpoena for a third batch of calls, to include Hohn's and a codefendant's CCA calls for the time period from May 13, 2013, to May 28, 2013. R.2.1752.

---

[3] The call detail records further reveal that Hohn called FPD toll-free numbers multiple times before April 23, 2012, and none of those calls were recorded because they were marked as privatized. R.2.552.

AUSA Morehead requested the calls out of concern that Hohn had threatened a cooperating witness in the case.  R.2.1752.

### E.    Hohn Does Not Allege or Prove That He Suffered Actual Prejudice

Hohn has conceded from the beginning that he "has not alleged individual prejudice," R.2.84, resulting from the alleged intentional-intrusion violation about which he complains.  He has conceded that he "do[es] not assert [he] can prove actual and additional prejudice"; instead, he relies on his interpretation of *Shillinger*'s presumed-prejudice rationale as a makeweight for prejudice. R.3.1093.  Under that rationale, "when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the trial process must be presumed," *Shillinger*, 70 F.3d at 1142.  In addition, Hohn stipulated that he "does not assert that he can prove that he suffered any actual—as opposed to presumptive—prejudice due to the prosecution team's becoming privy to the one attorney-client call listed in his privilege log."  Supp.R.2.143(#28).  In response an interrogatory, which asked, "Do you claim that you were actually prejudiced or harmed by the Sixth Amendment violations you claim?," Hohn responded, "Petitioner asserts he is entitled to an adverse inference that he was actually prejudiced or harmed."  Supp.R.2.59 (#24).  Hohn presented no evidence of actual prejudice at the evidentiary hearing.  The court concluded that "Hohn

makes clear that he cannot demonstrate a realistic possibility of prejudice and instead relies on the presumption of prejudice in *Shillinger*." R.2.1758. The court also denied the petitioners' request for an adverse inference that they suffered demonstrable prejudice. R.3.1105.

### F. The Court's Ruling and this Court's Grant of Certificate of Appealability

After the evidentiary hearing, the court issued a Memorandum and Order denying Hohn's § 2255 motion. R.2.1729. The court found that Hohn did not show that he had a reasonable expectation of confidentiality in the April 23, 2012 call, as required to satisfy the protected-communication element of his Sixth Amendment claim, so neither the attorney-client privilege nor Sixth Amendment protection ever attached to the call. R.2.1765. The court found as much because Hohn failed to heed the various warnings, advisements, and protocols posted by CCA regarding the making of unmonitored calls. R.2.1765-66. The court further ruled that even if the privilege attached, Hohn "waived the privilege by voluntarily disclosing attorney-client communications on a monitored or recorded phone line—effectively, a third party." R.2.1766; *see also* R.2.1767-69. On the same basis, the court also found that he waived his Sixth Amendment right to confidential communications with counsel on the call. R.2.1768.

On October 25, 2022, this Court granted a certificate of appealability on two issues: (1) "[w]hether the district court erred in ruling that Mr. Hohn failed to

prove the elements of his Sixth Amendment claim"; and (2) "[w]hether the district court erred in ruling that the government proved Mr. Hohn waived his Sixth Amendment right."

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**I.      WHETHER THE DISTRICT COURT ERRED IN RULING THAT HOHN FAILED TO PROVE THE ELEMENTS OF HIS SIXTH AMENDMENT CLAIM.**

**II.     WHETHER THE DISTRICT COURT ERRED IN RULING THAT THE GOVERNMENT PROVED HOHN WAIVED HIS SIXTH AMENDMENT RIGHT.**

## SUMMARY OF ARGUMENT

**Issue I.**  The court did not err in concluding that neither the attorney-client privilege nor Sixth Amendment protection ever attached to the call at issue because Hohn lacked an objectively reasonable expectation that his communication on the call would be confidential.  R.2.1765-66.  That conclusion was based on the court's findings that Hohn made the call knowing that it was subject to monitoring and recording, after having failed to heed CCA's clear advisements and warnings to this effect.  R.2.1765-66.  In so ruling, the court looked to the law of attorney-client privilege, consistent with applicable caselaw, noting that "the attorney-client privilege is a necessary underpinning of Hohn's Sixth Amendment right"; that the attorney-client privilege did not attach for lack of a reasonable expectation of

confidentiality; that it had not found any "case law that extends the Sixth Amendment right to confidential communications with counsel to attorney-client communications where the privilege did not attach for lack of a reasonable expectation of confidentiality"; and "because the attorney-client privilege is a necessary underpinning of Hohn's Sixth Amendment right, he cannot satisfy the protected-communication element of his claim." R.2.1768. Accordingly, the court's ruling was based on a factually permissible view of the evidence and a legally permissible application of the caselaw upon which it relied.

Hohn attempts to avoid this conclusion by positing that his communications on the call were *inherently* confidential under the Sixth Amendment, even if they were neither *factually* confidential nor protected by the attorney-client privilege. Based on this distinction, which this Court and the Supreme Court have never recognized, he argues that it is irrelevant under the Sixth Amendment that he chose to communicate with counsel on a line that he knew was recorded, or that his call was not protected by the attorney-client privilege. That cannot be right. But in any event, this Court cannot grant relief to Hohn on this basis because doing so would require it to create and apply a new rule of constitutional law on collateral review, which it cannot do without running afoul of the antiretroactivity doctrine of *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny.

**Issue II**.  The court did not err in ruling that Hohn waived his Sixth Amendment right.  To be clear, because the court found the call "was never protected under the Sixth Amendment," it "d[id] not reach the issue of waiver of any Sixth Amendment right," R.2.1768, in denying Hohn's claim.  Still, as a hypothetical proposition, the court found that "even if the government is required to make an additional showing that Hohn knowingly and intelligently waived his Sixth Amendment right to confidential communications with counsel, he effectively did so for the same reasons that he waived application of the attorney-client privilege."  *Id*.

This ruling was correct.  A waiver in the Sixth Amendment context must be voluntary, knowing, and intelligent.  *See Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).  Here, the record indisputably establishes that CCA told Hohn that all of his calls "except a properly placed phone call to an attorney" would be monitored and recorded; that he consented in writing to such monitoring and recording; that he made the call from a room with plentiful signage warning him that his call was subject to monitoring and recording; that a verbal advisement on the call itself told him the call was subject to monitoring and recording; and that CCA told Hohn that he could make an unmonitored phone call to his attorney "to ensure Attorney/Client privilege" if he followed CCA's protocols.  Hohn was aware of and understood these advisements and protocols but voluntarily and knowingly

declined to heed them before he made the call at issue.  Accordingly, Hohn's

course of conduct, including his express and written consent to the monitoring and

recording about which he now complains, established by a preponderance of the

evidence that he knowingly, voluntarily, and intelligently waived his right to

communicate confidentially on the call with his attorney.


## ARGUMENT AND AUTHORITIES

## I.  THE DISTRICT COURT DID NOT ERR IN RULING THAT HOHN FAILED TO PROVE THE ELEMENTS OF HIS SIXTH AMENDMENT CLAIM.

### Issue Raised and Ruled On

Below, the government argued that a communication on a call is protected

under the Sixth Amendment if it is privileged, which necessarily requires that the

parties on the call understood and reasonably expected it to be confidential and

remain confidential.  R.2.47-48.  In turn, the government noted that for the

attorney-client privilege to apply:  (1) the party claiming the privilege must bear

his burden to establish the privilege and prove its applicability; (2) the party

claiming the privilege must precisely identify what communication is privileged

rather than make a blanket claim; (3) the communication claimed to be privileged

must relate to legal advice, strategy, or a confidence relating thereto; and (4) the

holder of the privilege loses the privilege if he discloses the substance of a communication claimed to be privileged to a third party.  R.2.29-33.

The government applied these and other principles to the instant Sixth Amendment context, arguing that a violation of the Sixth Amendment right to confidential communications requires:  (1) a purposeful and illegitimate intrusion by the prosecution into (2) a defendant's confidential attorney-client communications, (3) as a result of which the prosecution learned the substance of the confidential communications, (4) which related to legal advice or strategy, and (5) which posed a realistic possibility of prejudice to a defendant or benefit to the government.  R.2.41-50.

As applicable to Hohn's case, the government cited these points in making two main arguments:  (1) that no privilege, expectation of confidentiality, or Sixth Amendment right *ever attached* to Hohn's call because he was advised that the call was subject to monitoring and recording before he uttered his first word on the call and knew that he was speaking on a recorded line; and (2) that even if a privilege, expectation, or right attached, if Hohn disclosed the substance of any of his communications on the calls to third parties, then Hohn lost or waived any applicable privilege, expectation of confidentiality, or Sixth Amendment protection.  *See* R.2.45-48, 33-36, 39, 46-47.

For its part, the court adopted a different elements-formulation to determine whether a Sixth Amendment violation occurs, though it adopted most of the government's arguments regarding the requirement that any communication be confidential. Applying *Shillinger*'s rationale, the court said that

> a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.

R.2.1758-59. And "[o]nce these elements are established, prejudice is presumed, resulting in a per se Sixth Amendment violation." R.2.1759.

The court explained that the first element—the protected-communication element—is defined with reference to the law of attorney-client privilege. R.2.1763-64. It noted that it had "consistently applied principles relating to the attorney-client privilege as an appropriate framework for showing that the recordings between [a defendant] and counsel are protected communications under the Sixth Amendment," and that "determining whether the privilege attached to a [defendant's] attorney-client recording was the logical starting point for the Court's analysis of whether [a defendant has] made a threshold showing on the protected-communication element of [his] claims." R.2.1763-64. The court stated that, in addition to this threshold showing, a defendant is "also required to establish there was a reasonable expectation of confidentiality with respect to audio

21

recordings," and made clear that a communication is protected both by the attorney-client privilege and the Sixth Amendment if it is "'intended to remain confidential and was made under such circumstances that it was reasonably expected and understood to be confidential.'" R.2.1764 (quoting *United States v. Melvin*, 650 F.2d 641, 654 (5th Cir. Unit B 1981)). The court found this requirement warranted by *Shillinger*, which it interpreted as requiring defendants "to show that the government became privy to *confidential* communications." R.2.1765. Accordingly, the court found that to establish the protected-communication element of his claim, Hohn had to "show that he had a reasonable expectation of confidentiality in his attorney-client call and that he did not otherwise waive the attorney-client privilege." R.2.1765.

Applying this framework, the court found that Hohn did not show that he had a reasonable expectation of confidentiality in his call, so neither the attorney-client privilege nor Sixth Amendment protection attached to the call, R.2.1765, because Hohn failed to heed the various warnings, advisements, and protocols posted by CCA regarding the making of unmonitored calls, R.2.1765-66.

## Standard of Review

 "A claim for ineffective assistance of counsel presents a mixed question of fact and law, which we review de novo." *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006). Legal conclusions are reviewed de novo, and factual findings are reviewed for clear error. *Id*.

## Discussion

Hohn's Sixth Amendment right to effective assistance of counsel included "the ability to speak candidly and confidentially with counsel free from unreasonable government interference." R.2.1733-34. To prove that the government violated this right, the court required Hohn to satisfy "the protected-communication element" of his claim, which in turn required that he "show that he had a reasonable expectation of confidentiality in his attorney-client call and did not otherwise waive the attorney-client privilege." R.2.1765. The court found that Hohn did not prove this element because he "did not have a reasonable expectation of confidentiality in the April 23 call to Campbell," R.2.1765, and consequently ruled that "no attorney-client privilege or Sixth Amendment protection attached to the communications" in the call, R.2.1765. This ruling was not erroneous—even though it was based on a mistaken formulation of the elements of a Sixth Amendment intentional-intrusion claim—because it was based on a factually permissible view of the facts and a correct application of the law.

**A.** **Even though the court did not err in ruling on Hohn's claim, it did err in relying on *Shillinger* in formulating the elements of a Sixth Amendment violation because *Shillinger*'s statement of those elements is contrary to the rule and rationale of *Weatherford* and *Morrison*.**

Hohn's Sixth Amendment claim rests entirely on *Shillinger*. *See* R.1.2661. The court agreed that *Shillinger* applies to this case and relied on *Shillinger* in stating the elements of Hohn's Sixth Amendment claim. R.2.1758-1759. The court erred in relying on *Shillinger*, and specifically *Shillinger*'s presumption of prejudice, because applying that presumption runs contrary to the rule and rationale of *Weatherford v. Bursey*, 429 U.S. 545 (1977), and *United States v. Morrison*, 449 U.S. 361 (1981), and other Supreme Court cases. The government urges this Court to reject *Shillinger*'s presumption of prejudice. At the very least, the government asks this Court not to rely on *Shillinger*'s presumption of prejudice at all because the Court can affirm the district court's denial of Hohn's § 2255 motion without addressing that aspect of *Shillinger*.

In *Shillinger*, this Court held that "when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed." 70 F.3d 1132, 1142 (10th Cir. 1995). This Court explained that its holding "subsumes the state's argument that harmless error analysis should apply to this sort of Sixth

Amendment violation because our *per se* rule recognizes that such intentional and groundless prosecutorial intrusions are never harmless because they necessarily render a trial fundamentally unfair." *Id*.

Applying *Shillinger*'s rationale, the court formulated the elements of a Sixth Amendment intentional-intrusion violation as follows:

> a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.

R.2.1758-59. And "[o]nce these elements are established, prejudice is presumed, resulting in a per se Sixth Amendment violation." R.2.1759.

This elements-formulation, which tracks *Shillinger*'s decisional rationale, is contrary to Supreme Court precedent in two ways. *First*, under that precedent, a mere intrusion, whether it be egregious or deliberate, does not constitute a Sixth Amendment violation. This is so because a Sixth Amendment violation cannot exist unless a realistic possibility of prejudice to the defendant or benefit to the prosecution results from the intrusion. *See Weatherford*, 429 U.S. at 558 (stating "there can be no Sixth Amendment violation" unless information communicated from the intrusion "created at least a realistic possibility of injury [to the defendant] or benefit to the State"; noting that although the informant's testimony "was surely very damaging" there was "no indication that any of [the informant's]

25

testimony was prompted by or was the product of those meetings"); *cf. Morrison*, 449 U.S. at 365-66 (assuming a Sixth Amendment violation and criticizing "the egregious behavior of Government agents" for their intrusion, but noting that "*absent demonstrable prejudice*, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, *even though the violation may have been deliberate*") (emphases added). *See also United States v. Cronic*, 466 U.S. 648, 658 (1984) (noting "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of an accused to receive a fair trial," and "[a]bsent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated"); *Strickland v. Washington*, 466 U.S. 668, 693 (1984) (noting "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice"); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) (stating "a violation of the Sixth Amendment right to *effective* representation is not 'complete' until the defendant is prejudiced").

*Second*, courts cannot presume prejudice, as *Shillinger*'s presumed-prejudice rationale allows, because such a presumption "cuts much too broadly" as a prophylactic rule and exceeds what the Constitution requires. *See Weatherford*, 429 U.S. at 557-58 (explaining that the Fourth Circuit's presumed-prejudice rule

[similar to the one established in *Shillinger*] "cuts much too broadly"[4] because it would operate even in cases where no prejudice or constitutional violation occurred; further noting that the Court "has no general oversight authority with respect to state police investigations" and "may disapprove an investigatory practice only if it violates the Constitution").[5]  In rejecting the Fourth Circuit's presumed-prejudice rule, the Court described hypothetical scenarios where an undercover agent purposefully intruded into attorney-client meetings but gained no information about defense plans or strategy that could be used against the defendant, and explained that the Fourth Circuit's per se rule, which would have required reversal of the defendant's conviction under these scenarios, "cuts much too broadly" because in those scenarios "*there would have been no constitutional violation*."  *Id*. at 557-58. (emphasis added).  The Court made clear that it rejected

---

[4]     *Weatherford* rejected the Fourth Circuit's presumed-prejudice rule, which held that "'whenever the prosecution knowingly arranges and permits intrusion into the attorney-client relationship the right to counsel is sufficiently endangered to require reversal and a new trial.'" 429 U.S. at 840-41 (quoting Fourth Circuit).

[5]     In *Weatherford*, an undercover agent met with a defendant and the defendant's attorney and discussed defense plans and strategies, but the Court found that no Sixth Amendment violation occurred because the intrusion did not taint any evidence.  429 U.S. at 557-58.  Likewise, in *Morrison*, a DEA agent met with a defendant who was represented by counsel without counsel present, 449 U.S. at 392, but the Court found that no remedy was warranted even though it assumed a Sixth Amendment violation occurred and found the behavior of the agent "egregious," because the defendant could not demonstrate prejudice, "even though the violation may have been deliberate," 449 U.S. at 365-66.

the Fourth Circuit's per se rule because it would have allowed defendants to challenge their convictions on Sixth Amendment grounds even where a government intrusion into attorney-client communications posed no realistic possibility of prejudice, such as where defense plans and strategies were not discussed, or the conversation "was confined to the weather or other harmless subjects." *Id*. This reasoning applies equally to *Shillinger*'s presumed-prejudice rationale.

Because *Shillinger*'s decisional rationale—that an intentional and illegitimate intrusion into the attorney-client relationship is a per se Sixth Amendment violation for which prejudice is presumed and to which harmless-error analysis does not apply, 70 F.3d at 1142—is incompatible with and contradicts the legal standards set out in *Weatherford* and *Morrison*, this Court cannot apply *Shillinger* to Hohn's case because it is bound by the doctrine of vertical stare decisis. *United States v. Guillen*, 995 F.3d 1095, 1114 (2021) (requiring circuit courts to "follow applicable Supreme Court precedent in every case," including rules, standards, or interpretations adopted by the Supreme Court); *see also United States v. Tsarnaev*, --- U.S.----, 142 S. Ct. 1024, 1036 (2022) (observing that "lower courts cannot create prophylactic supervisory rules that circumvent or supplement legal standards set out in decisions of this Court").

It is indisputable that *Shillinger*'s presumed-prejudice rationale allowed

Hohn to circumvent the legal standards in *Weatherford* and *Morrison*.  Indeed,

Hohn relied on it as the legal hook to circumvent these standards and obtain relief

in his case, even though he alleged neither actual prejudice nor a realistic

possibility of prejudice.  *See supra* pp. 14-15 (§ E.).  And the court relied on it in:

(1) formulating its elements test for a Sixth Amendment intentional-intrusion

violation, R.2.1758-59; (2) denying the government's request for harmless error

review under *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), and Rule 52(a)

of the Federal Rules of Criminal Procedure, R.3.1107-11; and (3) denying the

government the opportunity to review the call recording to assess harmlessness and

mount a harmless error argument, *id*.  Thus, *Shillinger* is a paradigmatic example

of a lower-court decision that circumvents and supplements the legal standards set

out by the Supreme Court, and this Court should jettison its rule and rationale

under the doctrine of vertical stare decisis and revert to the still-binding precedent

of *Weatherford* and *Morrison*.

Under the decisional rationale of those cases, a defendant seeking relief on

collateral review must show the following elements to sustain a Sixth Amendment

intentional-intrusion violation:  (1) a purposeful and illegitimate intrusion by the

prosecution into (2) a defendant's confidential attorney-client communications, (3)

as a result of which the prosecution learned the substance of the confidential

communications, (4) which related to legal advice or strategy, and (5) which posed a realistic possibility of prejudice to a defendant or benefit to the government. *See* R.2.41-50. Of course, any such violation must be reviewed for harmlessness as with any other nonstructural constitutional error. Fed. R. Crim. P. 52(a); *United States v. Dago*, 441 F.3d 1238, 1246 (10th Cir. 2006) (stating "the logic behind *Brecht* . . . is applicable in § 2255 cases" and applying harmless error review to § 2255 claim); *e.g.*, *Hoffa*, 385 U.S. at 308-09 (applying tainted-fruit analysis of *Wong-Sun* to Sixth Amendment intentional-intrusion violation); *Weatherford*, 429 U.S. at 558-59 (reviewing impact of informant's testimony at trial and noting that although the informant's testimony "was surely very damaging" there was "no indication that any of [the informant's] testimony was prompted by or was the product of those meetings").

In any event, *Shillinger*'s presumed-prejudice rationale cannot govern this case, or otherwise trump *Weatherford* and *Morrison*, for another reason: it is dicta. Dicta are "'statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand.'" *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir. 1995) (quoting Black's Law Dictionary 454 (6th ed.1990)); *see also Michael Abramowicz and Maxwell Stearns, Defining Dicta*, 57 Stan. L.Rev. 953, 1065 (2005) (concluding that "[a] holding consists of those propositions along the

30

chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment. If not a holding, a proposition stated in a case counts as dicta.") (cited with approval in *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1129 (10th Cir. 2009)).

Under these definitions, *Shillinger*'s presumed-prejudice rationale was dicta because it was not essential to the determination of that case. That is, in *Shillinger* any presumption of prejudice was irrelevant to the determination of that case because this Court found that the defendant in *Shillinger* was *actually* prejudiced because the prosecution made "use of improperly obtained evidence to impeach Haworth at his trial." *Shillinger*, 70 F.3d at 1143. Accordingly, it was dicta. *See Bates v. Dep't of Corrections*, 81 F.3d 1008, 1011 (10th Cir. 1996) ("[A] panel of this court is bound by a holding of a prior panel of this court but is not bound by a prior panel's *dicta*.").

B.   **The court properly applied the law relating to confidential communications in the attorney-client-privilege context in determining that Hohn could not satisfy the protected-communication element of his Sixth Amendment claim, which required that he prove the government became privy to *confidential* attorney-client communications.**

Defendant says that the court gave too much weight to the law relating to confidential communications in the attorney-client-privilege context in adjudicating his Sixth Amendment claim. (*See* Br.46-50.) But the court correctly concluded that the attorney-client privilege should be the starting point for

determining whether a defendant has satisfied the confidential communications element of a Sixth Amendment intentional-intrusion claim, under which a defendant must show that the government became privy to confidential communications.  *See* R.2.1768-69, 1765.

In *Weatherford*, the Supreme Court indicated that the Sixth Amendment's protection of confidential attorney-client communications goes hand-in-hand with the attorney-client privilege.  *See id.* 429 U.S. at 554 n.4 (citing analogous authority relating to attorney-client privilege in discussing whether the Sixth Amendment is violated when alleged confidences are discussed in the presence of third parties).  The Fifth and Eleventh Circuits also look to attorney-client privilege principles in this context.  *See Melvin*, 650 F.2d at 645 (noting, in a case where the defendant alleged a Sixth Amendment violation based on a confidential informant's presence during a meeting where the defendant spoke with his attorney, that "[t]he attorney-client privilege whether or not, and to what extent, it defines or limits the Sixth Amendment right to counsel in other contexts offers an appropriate framework for analysis in this case"); *United States v. Bell*, 776 F.2d 965, 971-72 (11th Cir. 1985) (adopting "the standard enunciated in [*Melvin*]" in determining whether the government unlawfully interfered in defendant's attorney-client relationship in violation of Sixth Amendment).

This is not surprising, since the attorney-client privilege provides the standard for assessing whether an attorney-client communication is confidential. *See In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010). And "the traditional sanctity of the attorney-client relationship, characterized by the confidentiality of communications between the attorney and client, is precisely what [Hohn has] sought to vindicate as against government intrusions." *Melvin*, 650 F.2d at 645. An attorney-client communication is not confidential, and therefore not privileged, if the communication is made under circumstances from which it may reasonably be assumed that the communication will not remain in confidence. *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006). *Shillinger*'s protection of attorney-client communications extends only to "confidential communications." 70 F.3d at 1142. That is, communications that the defendant reasonably expects are (and will remain) confidential. 70 F.3d at 1142; *see also Melvin*, 650 F.2d at 645 (citing *Weatherford*, 429 U.S. at 554 n.4); *United States v. Johnson*, No. 11-cr-00501, 2016 WL 297451 (D. Utah Jan. 22, 2016) (rejecting *Shillinger* claim based on waiver of attorney-client privilege); Note, *Government Intrusions into Defense Camp: Undermining the Right to Counsel*, 97 Harv. L. Rev. 1143, 1145 (1984) ("The right to private communication [between a defendant and counsel] also derives from the policies and principles underlying the attorney-client privilege. . . . Because the sixth amendment ensures a right to

effective assistance of counsel in criminal cases, it should follow that the sixth amendment subsumes the attorney-client privilege, a necessary underpinning of that right."). Accordingly, the court did not err in considering and applying principles of attorney-client privilege in determining whether Hohn had satisfied the protected-communication element of his claim. *See* R.2.1768.

**C.    It is generally accepted that a prisoner who places a call from an institutional phone with knowledge that the call is subject to being recorded has impliedly consented to the recording, so the call is not confidential or protected by the attorney-client privilege.**

Hohn does not and cannot dispute that his call was *not* protected by the attorney-client privilege, and the fact that it was not should inform the Sixth Amendment analysis as to whether or not the call was confidential, especially in the instant context involving an inmate-detainee who makes a call from a correctional institution on a line he knows is subject to monitoring and recording.

Numerous courts have held that notice to an inmate advising that jailhouse calls are subject to recording and monitoring destroys any reasonable expectation of confidentiality in the communications, without which no privilege ever attaches to the monitored communications. *See, e.g., United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003) (finding no attorney-client privilege attached to calls between inmates and attorneys because "the parties to these conversations were aware that they were being recorded by the prison" and "[t]he presence of the prison recording device destroyed the attorney-client privilege").

In effect, a recording device is deemed to be a third party to whom disclosure of the communication is being made. *See id.* ("Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private. The presence of the recording device was the functional equivalent of the presence of a third party."); *United States v. Mejia*, 655 F.3d 126, 132-34 (2d Cir. 2011) (holding that a prisoner's communication that the prisoner knows is being recorded by prison authorities is not covered by the attorney-client privilege because the prisoner could not intend such call to be confidential; further declaring that "[t]he fact that the call was being recorded amounts essentially to the presence of an unsympathetic third party—[Bureau of Prisons]—listening in"); *see also United States v. Lentz*, 419 F. Supp. 2d 820, 827-28 (E.D. Va. 2005); *Watson v. Albin*, 2008 WL 2079967 at *5 (N.D. Cal. May 12, 2008); *United States v. Eye*, 2008 WL 1701089 at *13 (W.D. Mo. Apr. 9, 2008).

Courts, including this one, have applied this principle in contexts analogous to this one. For instance, in *United States v. Faulkner*, 439 F.3d 1221 (10th Cir. 2006), this Court found, for purposes of Title III's consent requirement, that the defendant-inmate "impliedly consented to recording" of his calls with non-attorney associates while being detained at CCA, where: (1) the defendant-inmate received an orientation manual upon arrival, which stated that the "[t]elephones are subject

to recording and monitoring"; (2) inmates were advised during orientation that their calls "could be" recorded; (3) inmates received an inmate handbook warning that "[t]elephone conversations may be monitored and/or recorded for security reasons"; (4) signs posted over the phones announced that calls are subject to monitoring; and (5) "it appears that when a call is placed from CCA, a recorded voice states, "This call is subject to monitoring and recording." *Id*. at 1222-25 (internal quotation marks omitted; alterations in *Faulkner*). *See also United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996) (finding, in Fourth Amendment context, that defendant had no expectation of privacy in jailhouse calls he made to non-attorney associates and consented to the taping of such calls "because he (1) signed a form warning him of monitoring and taping; (2) read signs above the phones warning of taping; and (3) read a prisoner's manual warning of the recordings"); *United States v. Footman*, 215 F.3d 145, 154-55 (1st Cir. 2000) (finding, for purposes of Title III's consent requirement, that defendant-inmate consented to monitoring and recording of his calls to non-attorney associates, where, in order to use phones, inmates are required to sign a form stating that they understand that their calls will be monitored and recorded, stickers on the phones stated that calls are being recorded, and at the start of each call a pre-recorded message advised both parties to the call that all calls will be recorded except approved attorney calls).

**D.** **The court did not err, or otherwise deviate from *Shillinger*'s rationale, in applying principles relating to the attorney-client privilege as an appropriate framework for deciding whether the call was a protected communication under the Sixth Amendment.**

Hohn says that *Shillinger* "definitively declined to adopt a privilege element" in considering a defendant's Sixth Amendment claim. (Br.31.) He is wrong. *Shillinger* did not even address the interplay of privilege principles in relation to the Sixth Amendment intentional-intrusion claim at issue in that case, so it could not have definitively declined to adopt a privilege element as Hohn claims. As evidence of *Shillinger*'s definitiveness on this point, Hohn relies on what *Shillinger* did *not* do: (1) it did not ask whether the defendant proved the privilege element or find that he did (Br.32); (2) it did not announce a privilege element (Br.32-33); (3) it did not apply a privilege element (Br.33); and (4) it did not direct the district court to apply a privilege element on remand (Br.34-35). In effect, because *Shillinger* did not apply, discuss, or pronounce on the role of privilege principles in relation to the defendant's Sixth Amendment claim, and resolved the defendant's claim without regard to them, Hohn suggests that *Shillinger*'s silence constitutes a definitive statement that these principles do not apply in the Sixth Amendment context.

Hohn overreads *Shillinger* on this point. Although the prosecutor in *Shillinger* had argued to the lower court that "the attorney-client privilege had been waived by the deputy's presence," 70 F.3d at 1135, it is not clear whether this

argument was even advanced on appeal. However, it *is* clear that this Court did

not consider the merits of this argument because the opinion in *Shillinger* does not

address it. Accordingly, because this issue may not have been raised in *Shillinger*

and was not addressed in *Shillinger*, this Court should decline to give any

precedential or persuasive bearing to *Shillinger*'s silence on the issue. *See Webster*

*v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record,

neither brought to the attention of the court nor ruled upon, are not to be

considered as having been so decided as to constitute precedents."); *accord United*

*States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952); *United Food &*

*Commercial Workers Union, Local 1564 of N.M. v. Albertson's, Inc.*, 207 F.3d

1193, 1199 (10th Cir. 2000). Thus, the court did not deviate from *Shillinger* in

applying privilege principles to its Sixth Amendment analysis because *Shillinger*

never said they could not apply.

### E.   This Court should reject Hohn's view that attorney-client privilege principles have no role in Sixth Amendment analysis.

The court acknowledged that "the protection afforded by the Sixth

Amendment includes, but is not limited to, the scope of the attorney-client

privilege." R.2.1763. Accordingly, the court considered privilege principles in its

Sixth Amendment analysis, stating that "determining whether the privilege

attached" to an attorney-client recording is "the logical starting point for the

Court's analysis" of whether a defendant has "made a threshold showing on the

protected-communication element" of a Sixth Amendment claim. R.2.1764. The court explained that in addition to this threshold showing, a defendant must also "establish that there was a reasonable expectation of confidentiality with respect to audio recordings," R.2.1764, and "to establish the protected-communication element, Hohn must show that he had a reasonable expectation of confidentiality in his attorney-client call and that he did not otherwise waive the attorney-client privilege," R.2.1765.

Hohn asks this Court to disregard privilege principles in the Sixth Amendment context. He argues that the attorney-client privilege has no role to play in this case because it serves different purposes than the Sixth Amendment (Br.26-41), with the Sixth Amendment serving the goal of "ensur[ing] that defendants receive fair adversarial hearings" (Br.37), and the privilege serving the goal of "encourag[ing] candid attorney-client communications" (Br.39). Hohn asserts that "the privilege promises all-or-nothing confidentiality solely to ensure that attorney-client communications occur," but the Sixth Amendment right "guarantees adversarial confidentiality to ensure that, *once those communications occur*, the prosecution's access to them does not render the adversarial proceedings unfair." (Br.45.)

Based on these different purposes, Hohn contends that for Sixth Amendment purposes, attorney-client communications should be considered "inherently"

confidential, but for privilege purposes they need only be "factually" confidential. (*See* Br.47 (positing that *Shillinger* "used 'confidential' to describe what defendants' substantive attorney-client communications *inherently are* for constitutional purposes—not to convey what defendants must prove their communications *factually were* in order to demonstrate that a constitutional violation occurred").)  In arguing as much, Hohn is suggesting a defendant need not have any expectation of confidentiality in his attorney-client communications, much less a reasonable expectation of confidentiality in them, in order to prevail on a Sixth Amendment intentional intrusion claim, because those communications are inherently confidential as a matter of law irrespective of any such expectation.

Relatedly, Hohn argues (Br.50-51) that the court erroneously rejected, *see* R.2.1767-68, his argument that, even if he waived the attorney-client privilege as to CCA by consenting to the recording of his conversation with counsel, he did not by the same token waive his Sixth Amendment right to keep the call confidential from the prosecution team.  He says the court erroneously applied this Court's selective-waiver rule, *see In re Qwest*, 450 F.3d at 1192, which is a privilege rule, in concluding that he could not selectively waive his Sixth Amendment right as to CCA without waiving it as to the prosecution team.  R.2.1767-68.  He asserts that "constitutional rights—unlike evidentiary privileges—are amenable to selective

waivers," and that "*Shillinger* itself proves that defendants can selectively waive this Sixth Amendment right."[6]  (Br.51.)

This Court should reject Hohn's view because it runs contrary to legal sense, common sense, analogous caselaw, and on-point caselaw.  A hypothetical is illustrative.  Imagine if instead of calling his attorney on April 23, 2012, Hohn had the same conversation with his attorney while sitting at a table with his attorney and a deputy with the U.S. Marshals Service.  Imagine next that the deputy gave Hohn the option of either having the conversation with his attorney privately or with the deputy sitting there, listening, and recording the conversation as part of his job to protect public safety.  These imagined facts are materially identical to the actual facts of Hohn's case.  If Hohn chose to let the deputy stay, listen, and record, it would be absurd to say that Hohn's Sixth Amendment right to effective assistance of counsel was violated.  *See, e.g.*, *Mejia*, 655 F.3d at 132-34*; Hatcher*, 323 F.3d at 674; *Melvin*, 650 F.2d at 646; *Bell*, 776 F.2d at 971-72; *see also*

---

[6]      Hohn does not explain why *Shillinger* "proves" this.  *Shillinger* did not reach or discuss the selective-waiver issue, and its failure to do so does not stand as proof that *Shillinger* took *any* position on the issue of selective-waiver, much less the position that Hohn says it took.  The government acknowledges that the defendant in *Shillinger* allowed a third party (a deputy whom the defendant paid and instructed to consider himself an employee of defense counsel and to keep the conversation private, 70 F.3d at 1134) to sit in on his attorney-client meeting, but *Shillinger* did not consider whether this was a selective waiver that defeated the attorney-client privilege or the defendant's right to confidentiality.

R.2.33-36 (compiling additional cases). The facts in Hohn's case are materially identical to this scenario.

Nor does Hohn's "different-purposes" argument give this Court any reason to reject application of attorney-client-privilege principles in the Sixth Amendment context. Both the attorney-client privilege and the Sixth Amendment share the same purpose of encouraging confidential disclosures by a client to his attorney. To be sure, the overarching purpose of the Sixth Amendment right to the effective assistance of counsel is to ensure that a defendant receives a fair trial. *Morrison*, 449 U.S. at 364. But it achieves that purpose by ensuring that a defendant can communicate freely with his attorney and thereby obtain the expert assistance necessary to make the adversarial process fair. *See, e.g.*, *Geders v. United States*, 425 U.S. 80, 88 (1976) (holding that a court order prohibiting a defendant from consulting with his attorney during an overnight recess separating the direct- and cross-examination of the defendant violated the defendant's Sixth Amendment right to the assistance of counsel because "the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events," and because "[o]ur cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance"). *That* is the primary way the right

to the effective assistance of counsel ensures the right to a fair trial. And that is the purpose of the attorney-client privilege. *See Weatherford*, 429 U.S. at 554 n.4.

Contrary to what Hohn claims, the Sixth Amendment does not vindicate the right to effective assistance of counsel by invalidating untainted proceedings when a defendant invites the government into his attorney-client communications. *See Morrison*, 449 U.S. at 364-366. Nor is the Sixth Amendment a tool for detecting and deterring government misconduct for its own sake, which is how Hohn suggests it be used here. *See Cronic*, 466 U.S. at 662 n.31 (1984) (noting that the "fact that the accused can attribute a deficiency in his representation to a source external to trial counsel does not make it any more or less likely that he received the type of trial envisioned by the Sixth Amendment, nor does it justify reversal of his conviction absent an actual effect on the trial process or the likelihood of such an effect; therefore the focus of the Sixth Amendment inquiry is not on the "culpability" of a prosecutor, but on the "effect" of alleged prosecutorial misconduct "on the fairness of the trial").

In any event, even if this Court were to agree that the attorney-client privilege and the Sixth Amendment define confidentiality differently, it would make no difference in this case because Hohn knowingly disclosed his attorney-client communications on the April 23, 2012 call to the government—his

adversary—because he knew the recorded call could be used for law enforcement purposes to protect the public.  *See* R.2.1014, 1050.

> **F.  This Court should reject Hohn's request that this Court create and apply a new constitutional rule to his case on collateral review.**

To be clear, Hohn is arguing that an attorney-client communication is *inherently* confidential under the Sixth Amendment—even if it is not *actually* confidential, even if it is not protected by the attorney client privilege, even if a defendant knowingly discloses the communication to a third party he knows is not a member of the defense team, and even if a defendant does not have a reasonable expectation that the communication is and will remain confidential.  To be equally clear, Hohn's claim for habeas relief depends entirely on his inherent-confidentiality argument:  he cannot satisfy the protected-communication element of his claim unless his call was confidential, and he cannot overcome the court's factual finding that his call was not confidential (because he lacked a reasonable expectation of confidentiality as to the call) unless this Court disregards the court's factual finding and says the call was inherently confidential as a matter of law, which this Court can do only by creating a new rule of criminal procedure.

Before explaining why this Court should decline to adopt Hohn's proposed inherent-confidentiality rule, the government pauses to note that Hohn raises it for the first time on appeal, so it is forfeited.  Below he argued that he had a reasonable

expectation that his call would remain confidential from the prosecution team for various reasons, *see* R.2.1698-1705, but he did not raise the inherent-confidentiality argument he now presents. Although plain-error review ordinarily applies to forfeited arguments, Hohn does not argue for plain error and its application on appeal, so he has waived plain-error review of this argument. *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). Therefore, he loses.

Even so, this Court should decline to adopt Hohn's proposed inherent-confidentiality rule. In effect, Hohn is arguing for application of a new constitutional rule of criminal procedure to his case on collateral review to overturn his final conviction, but this Court cannot create and apply such a rule on collateral review without running afoul of the Supreme Court's antiretroactivity jurisprudence. Under *Teague*'s doctrine, "a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced," *Montgomery v. Louisiana*, 577 U.S. 190, 198 (2016), including new watershed rules of criminal procedure, *Edwards v. Vannoy*, --- U.S. ----, 141 S. Ct. 1547, 1559-60 (2021).[7] Although "new substantive rules of constitutional law" are not subject to *Teague*'s antiretroactivity bar, *Montgomery*,

---

[7] Although *Teague* was a § 2254 case, this Court has held that *Teague* applies to § 2255 cases, *Daniels v. United States*, 254 F.3d 1180, 1194 (10th Cir. 2001), and the Supreme Court has assumed that it does, *Welch v. United States*, 578 U.S. 120, 128 (2016). *Teague*'s doctrine applies not only to a new rule announced in a judicial decision after a defendant's conviction has become final on direct appeal,

577 U.S. at 198, the new rule Hohn asks this Court to adopt is not a substantive rule because it does not alter the range of conduct or the class of persons that the law punishes, *id*. at 200-01.

Moreover, Hohn's proposed rule is new because it was not "dictated" by any precedent in effect when his conviction became final in 2013. *See Lambrix v. Singletary*, 520 U.S. 518, 538 (1997) ("A rule is "new" unless it was so "dictated" by precedent in effect when the defendant's conviction became final that "no other interpretation was reasonable."); *Edwards*, 141 S. Ct. at 1555 ("a rule is new unless, at the time the conviction became final, the rule was already 'apparent to all reasonable jurists'") (quoting *Singletary*, 520 U.S. at 528). It is not enough that the rule is within the "logical compass" of a prior decision, or even "controlled" by a prior decision. *Butler v. McKellar*, 494 U.S. 407, 414-15 (1990).

No precedent known to the government would have dictated Hohn's proposed new rule at the time of his conviction. Indeed, Supreme Court and federal circuit precedents that predated Hohn's 2013 conviction strongly suggested that Sixth Amendment confidentiality may be waived if a defendant knowingly communicates a confidence to a third party. *See Weatherford*, 429 U.S. at 554 n.4

---

but also to a novel argument a defendant advances as grounds for obtaining relief on collateral review. *See Saffle v. Parks*, 494 U.S. 484, 487-88 (1990) (considering whether new rule of federal constitutional law urged by defendant on collateral review qualified for retroactive application under *Teague*).

(1977) (using "cf." signal and citing analogous authority relating to attorney-client privilege in discussing whether the Sixth Amendment is violated when alleged confidences are discussed in the presence of third parties); *Melvin*, 650 F.2d at 645 (1981); *Bell*, 776 F.2d at 971 (1985) (both holding that an attorney-client communication is protected under the Sixth Amendment if it is (1) intended to remain confidential and (2) was made under such circumstances that it was reasonably expected and understood to be confidential). And, contrary to *Hohn*'s assertion, nothing in *Shillinger* provides unequivocal support for his view that *Shilllinger* "used 'confidential' to describe what defendants' substantive attorney-client communications *inherently are* for constitutional purposes." (Br.47.) This novel interpretation was not *dictated* by *Shillinger*, or apparent to all reasonable jurists interpreting the use of the word "confidential" as used in *Shillinger*.

In sum, granting relief to Hohn would require a new rule of constitutional law—that an attorney-client communication is inherently confidential under the Sixth Amendment, whether or not it is protected by the attorney client privilege, whether or not the defendant knowingly discloses the communication to third parties who are not members of the defense team, and whether or not the defendant has a reasonable expectation that the communication is and will remain confidential. Thus, because Hohn's proposed rule is new, and does not qualify as a substantive rule under *Teague*'s antiretroactivity doctrine, that doctrine bars relief.

"As the Court has explained, applying constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." *Edwards*, 141 S. Ct. at 1554.

### G. The court did not legally or factually err in denying Hohn's claim on the basis that he lacked a reasonable expectation of confidentiality in the call.

Ultimately, the court denied Hohn's claim on the basis that he "failed to carry his burden to establish he had a reasonable expectation of confidentiality" in the call, R.2.1765, and thereby failed to establish the protected-communication element of his claim, R.2.1768. Hohn does not dispute the court's factual finding that he did not have a reasonable expectation of confidentiality in the call. Rather than dispute it, Hohn tries to sidestep it by arguing that for Sixth Amendment purposes, attorney-client communications should be considered "inherently" confidential, but for privilege purposes they need only be "factually" confidential. (Br.47.) In this way, he argues that the finding is legally irrelevant without arguing that it was clearly erroneous.

This finding governs the outcome here because it is not clearly erroneous and is supported by caselaw. The court tethered this finding to the specific facts and circumstances of Hohn's incarceration, including his acknowledged intentional failure to heed the many advisements and warnings he received from CCA about

his calls being monitored lest he follow CCA's protocols to make unmonitored calls to his attorney. *See* R.2.1765-66. This finding also comports with the caselaw holding that an attorney-client communication is protected under the Sixth Amendment if it is (1) intended to remain confidential and (2) was made under such circumstances that it was reasonably expected and understood to be confidential, *see Melvin*, 650 F.2d at 645; *Bell*, 776 F.2d at 971, which the court relied on, *see* R.3.907-08 n.63; R.2.1764 n.202 (court relying on *Melvin*). Analogous authorities also supported the finding, including the many cases referenced above, *see supra* at pp. 34-36 (§ C), holding that an inmate who makes a call from a correctional facility on a line that he knows is recorded or monitored consents to the recording and monitoring and thereby loses any reasonable expectation of confidentiality in his call as well as attorney-client privilege.

Thus, because this finding was not clearly erroneous and the court did not misapply the law in making it, the court did not err in concluding that Hohn lacked a reasonable expectation of confidentiality in the call and therefore failed to satisfy the protected-communication element of his claim.

## II. THE DISTRICT COURT DID NOT ERR IN RULING THAT THE GOVERNMENT PROVED HOHN WAIVED HIS SIXTH AMENDMENT RIGHT.

**Issue Raised and Ruled On**

Below, the government argued that because Hohn lacked any objectively reasonable expectation of confidentiality in the call, the call was never protected by the Sixth Amendment, and waiver of any Sixth Amendment right was irrelevant. R.2.1623. Even so, the government argued that Hohn knowingly and intelligently waived any Sixth Amendment right to confidential communications in the call by (1) signing the consent-to-monitoring form before placing the call, and (2) placing the call on a line he knew was monitored or recorded by CCA. R.2.1623. Hohn argued that the government had to overcome the presumption against waiver of a constitutional right, R.2.1652, and had to show that Hohn (1) knew he had a constitutional right to preclude the prosecution team from becoming privy to his call; (2) understood the consequences of waiving this right; (3) knew that engaging or failing to engage in particular conduct would be construed as effecting a waiver; and (4) voluntarily engaged or failed to engage in such conduct, R.2.1654.

The court found that "because the call . . . was never protected under the Sixth Amendment, the [c]ourt does not reach the issue of waiver of any Sixth Amendment right." R.2.1768. The court further ruled that even if the government were "required to make an additional showing that Hohn knowingly and

intelligently waived his Sixth Amendment right to confidential communications with counsel, he effectively did so for the same reasons he waived the attorney-client privilege." R.2.1768. The court found that Hohn "waived the privilege by knowingly and voluntarily disclosing attorney-client communications on a monitored or recorded line—effectively a third party," noting that "[a]ny voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." R.2.1766.

## Standard of Review

*See Orange*, 447 F.3d at 796.

## Discussion

Even assuming Hohn was required to knowingly and intelligently waive his Sixth Amendment right to confidential communications with his attorney on the call, he did so in at least two ways: (1) by signing the consent-to-monitoring form before placing the call, and (2) by placing the call on a line that he knew was monitored or recorded by Securus and CCA.

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), and must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," *Moran v. Burbine*, 475 U.S. 412, 421 (1986). For example, "the Sixth Amendment right to counsel may be waived

by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). A waiver may be established by a preponderance of the evidence. *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010).

A waiver of a constitutional right need not be express. *North Carolina v. Butler*, 441 U.S. 369, 374-76 (1979). Rather, "the question of waiver must be determined on the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Id*. at 374-75 (internal quotation marks omitted). "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis*, 560 U.S. at 385. In a habeas action, a defendant bears the burden of proving that he did not waive a constitutional right that he places in issue. *See Parke v. Raley*, 506 U.S. 20, 31 (1992) ("Our precedents make clear . . . that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant."); *cf.*, *e.g.*, *Zerbst*, 304 U.S. at 468-69 ("It must be remembered, however, that a judgment cannot be lightly set aside by collateral attack, even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a

presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of Counsel.").

The record in this case shows both that Hohn did not bear his burden to show that he did not waive his right to confidentially speak with his attorney on the call, and that he did, in fact, waive this right. He signed the consent-to-monitoring form, which stated that all of his calls from CCA, "except a properly placed phone call to an attorney" could be recorded and monitored to preserve security at CCA and to protect the public, and that he had to contact his unit team manager to request an unmonitored attorney call. R.2.1012-15; Supp.R.2.21. Although CCA's handbook did not advise him that the right to make a confidential call arose from the Sixth Amendment, it did advise him of CCA's protocol allowing him to make unmonitored calls to his attorney "to ensure Attorney-Client privilege," Supp.R.2.30(XIII ##8-9), which was sufficient to alert him that the right to confidentially communicate with his attorney was at stake, even if it was not more precisely described. Hohn agreed that the handbook set forth a procedure to ensure attorney-client privilege and advised him that it was his "responsibility to ensure

that your attorney is aware of this procedure," R.2.1019-20; and he did not heed this warning or follow the protocol, R.2.1020.

Furthermore, Hohn made the call at issue from a room with plentiful signage warning him that his call was subject to monitoring and recording, R.2.1038, Supp.R.2.106-07 (photos); he admitted he did not contact his unit team manager to make a non-recorded call or follow CCA's protocols for making a non-recorded call before making the call, R.2.1038-39; and he knew from the preamble played on the call itself that the call was subject to monitoring, R.2.1040. Hohn acknowledged that he knew before uttering his first word on the call that his conversation with his attorney was subject to monitoring and recording, yet he still chose to speak will full knowledge that the call would be monitored and recorded. R.2.1040.

All of this amounts to a "course of conduct indicating waiver," *Butler*, 441 U.S. at 373, both demonstrating that this case is one where "waiver can be clearly inferred from [Hohn's] actions and words," *id*., and establishing by a preponderance of the evidence that Hohn knowingly and intelligently waived his right to speak confidentially with his attorney on the call. *Cf. Faulkner*, 439 F.3d at 1222-25 (finding defendant impliedly consented to recording of his calls at CCA in light of various advisements about recording of calls provided by CCA in

orientation manual, inmate handbook, signage on phones, and verbal advisement on calls).

Hohn says the court erred in finding that he waived his Sixth Amendment right by waiving the attorney-client privilege, both because the waiver standards are not the same (Br.54-57), and because the court "did not require the government to prove" that he did not waive his right by proving that Hohn knew he had the right or understood that, if he waived it, the prosecution could obtain the call (Br.58). This Court should reject this claim.

First, it was Hohn—not the government—who had the burden to prove that he did not waive his Sixth Amendment right to speak confidentially with his attorney on the call. *Parke*, 506 U.S. at 31; *Zerbst*, 304 U.S. at 468-69. Hohn never carried this burden below and he does not attempt to do so or even acknowledge that he has this burden on appeal. So to the extent that Hohn's arguments for relief depend on the government failing to carry his burden for him, they must be rejected.

Second, the government acknowledges that the standards for waiver of the attorney-client privilege and waiver of the Sixth Amendment right are different, but those differences do not render the court's waiver analysis erroneous here. As noted, a court may infer waiver of a constitutional right from a "course of conduct indicating waiver," *Butler*, 441 U.S. at 373, including from a defendant's "actions

and words," *id.*, and here the court found that Hohn waived his Sixth Amendment right for the same reasons it found he waived the attorney-client privilege—that is, "by knowingly and voluntarily disclosing attorney-client communications on a monitored or recorded line—effectively a third party." R.2.1766. The court identified three circumstances from Hohn's course of conduct that indicated a waiver: (1) "Hohn's clear admission that when he consented to the monitoring or recording of his calls, he knew and understood that unless he followed the privatization procedure, his attorney-client calls were being recorded by CCA and Securus"; (2) "he knowingly and voluntarily placed the call to Campbell without taking steps available to him to privatize the call"; and (3) by doing so he lost any reasonable expectation of confidentiality. R.2.1767. Although there might be some instances where a waiver of the attorney-client privilege will not amount to a waiver of a Sixth Amendment right to confidentiality, this is not such a case.

Finally, even if Hohn misapprehended the scope of his waiver, that does not invalidate the waiver. By analogy, even though a guilty plea must be entered knowingly, intelligently, and with sufficient awareness of relevant circumstances and likely consequences—surely a much higher standard than is required to waive the right to confidential attorney-client communications—"the Constitution . . . does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various

constitutional rights, despite various forms of misapprehension under which a defendant might labor," such as misapprehending the quality of the government's case, relevant penalties, or potential defenses. *United States v. Ruiz*, 536 U.S. 622, 629-31 (2002). Here, Hohn had enough information here to make a voluntary, knowing, and intelligent waiver of his right to have a confidential conversation with his attorney on the call.

## CONCLUSION

This Court should affirm the court's denial of Hohn's § 2255 motion.

## STATEMENT REGARDING ORAL ARGUMENT

The government believes that oral argument would materially assist this Court in resolving the issues presented and therefore does request oral argument.

Respectfully submitted:

DUSTON J. SLINKARD
United States Attorney

s/ *James A. Brown*
JAMES A. BROWN
Assistant United States Attorney
Ks. S.Ct. No. 14254
Federal Building, Suite 290
444 SE Quincy
Topeka, KS  66683-3592
Telephone: (785) 295-2850
Facsimile: (785) 295-2853
E-mail: James.Brown2@usdoj.gov
Attorneys for the United States

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 13,397 words.  I relied on my word processor to obtain the count and it is Microsoft Word 2010.  I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

## <u>CERTIFICATIONS</u>

**Service.** I hereby certify that this document was electronically filed on the **10th day of March, 2023**, with the Clerk of the Court by using the ECF system, which will send a copy with the Notice of Docket Activity to all ECF system participants as of the time of the filing; and that seven written copies of this document, including any attachments(s), will be submitted to FedEx for delivery within two business days of the filing, addressed to Mr. Christopher M. Wolpert, Clerk of the Court, U.S. Court of Appeals, Byron White U.S. Courthouse, 1823 Stout Street, Denver, CO 80257.

**Privacy Redactions**. I further certify that all required privacy redactions, if any, have been made.

**Paper Copies**. I further certify that any paper copies required to be submitted to the Court are exact copies of the version submitted electronically.

**Virus Scan**. I further certify that the electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program, McAfee Endpoint Security 10.5, which is updated continuously and, according to the program, is free of viruses.

s/ *James A. Brown*
JAMES A. BROWN
Assistant United States Attorney
