No. 22-3009

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**UNITED STATES OF AMERICA**,
          Plaintiff-Appellee,

          v.

**STEVEN M. HOHN**,
          Defendant-Appellant.

_____

On Appeal from the United States District Court for the District of Kansas
The Honorable Julie A. Robinson, U.S. District Judge
D.C. Nos. 12-cr-20003, 19-cv-2082, 19-cv-2491

_____

## EN BANC SUPPLEMENTAL BRIEF OF APPELLEE THE UNITED STATES
_____

KATE E. BRUBACHER
United States Attorney
District of Kansas

JAMES A. BROWN
Assistant United States Attorney
444 SE Quincy, Room 290
Topeka, Kansas  66683-3592
Phone: (785) 295-2850

Attorneys for Plaintiff-Appellee
the United States of America

**ORAL ARGUMENT SCHEDULED FOR MAY 14, 2024**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................ 1

SUPPLEMENTAL QUESTIONS PRESENTED ............................................................ 2

STATEMENT OF THE CASE ...................................................................................... 2

SUMMARY OF ARGUMENT ...................................................................................... 5

ARGUMENT ............................................................................................................... 6

    A.   *Shillinger* must be overruled. .................................................................. 6

        1.   *Shillinger* is irreconcilable with *Weatherford* and *Morrison*. ............ 7

        2.   *Shillinger* contravenes the Supreme Court's general disapproval of per se Sixth Amendment rules. ................................ 10

        3.   The Supreme Court's rationales for recognizing structural errors do not support *Shillinger*. ........................................................ 14

        4.   *Shillinger* carries little or no stare decisis weight. ........................... 18

    B.    The Sixth Amendment's protection against government intrusion into attorney-client communications generally applies only to privileged communications, and certainly does not protect communications in which a defendant has no reasonable expectation of confidentiality. ...................................................................................... 19

        1.   The Sixth Amendment's protection against government intrusion into attorney-client communications is generally co-extensive with the attorney-client privilege. .................................... 19

        2.   To the extent the Sixth Amendment protects non-privileged communications, it protects only those in which the defendant has a reasonable expectation of confidentiality. .............................. 20

        3.   The Sixth Amendment does not protect Hohn's call because it was not privileged and he had no reasonable expectation of confidentiality. .................................................................................. 22

i

4. Hohn's remaining arguments about confidentiality, waiver, and *Shillinger* are without merit....................................... 23

CONCLUSION ............................................................................................ 25

CERTIFICATE OF COMPLIANCE ............................................................... 27

CERTIFICATE OF SERVICE......................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Brooks v. Tennessee*, 406 U.S. 605 (1972) .......................................................... 11

*Brown v. Davenport*, 596 U.S. 118 (2022) ......................................................... 16

*Ferguson v. Georgia*, 365 U.S. 570 (1961) ......................................................... 11

*Geders v. United States*, 425 U.S. 80 (1976) ................................................ 11, 20

*Herring v. New York*, 422 U.S. 853 (1975) ......................................................... 11

*Hoffa v. United States*, 385 U.S. 293 (1966) ...................................................... 23

*In re CCA Recordings 2255 Litig.*, No. 19-cv-2491-JAR, 2021 WL 5868517
    (D. Kan. Dec. 10, 2021) ................................................................................. 17

*In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179 (10th Cir. 2006) ...................... 19

*Kansas v. Ventris*, 556 U.S. 586 (2009) ............................................................. 13

*Maine v. Moulton*, 474 U.S. 159 (1985) .............................................................. 13

*McCoy v. Louisiana*, 584 U.S. 414 (2018) .......................................................... 15

*McKaskle v. Wiggins*, 465 U.S. 168 (1984) ......................................................... 15

*Milton v. Wainwright*, 407 U.S. 371 (1972) ................................................. 13, 17

*Montejo v. Louisiana*, 556 U.S. 778 (2009) ........................................................ 24

*Perry v. Leeke*, 488 U.S. 272 (1989) ...................................................... 10, 11, 12

*Premo v. Moore*, 562 U.S. 115 (2011) ................................................................ 16

*Shillinger v. Haworth*, 70 F.3d 1132 (10th Cir. 1995) ........................ 7, 9, 11, 12, 15, 18

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................. 6, 15

*United States v. Allen*, 491 F.3d 178 (4th Cir. 2007) ..................................... 9, 17

*United States v. Bell*, 776 F.2d 965 (11th Cir. 1985) .......................................... 22

*United States v. Castor*, 937 F.2d 293 (7th Cir. 1991) ......................................... 9

*United States v. Cronic*, 466 U.S. 648 (1984) .............................................. 6, 10, 13, 15, 20

*United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003) ................................. 9

*United States v. Dominguez*, 998 F.3d 1094 (10th Cir. 2021) .......................... 15

*United States v. Esformes*, 60 F.4th 621 (11th Cir.),
    *cert. denied.*, 144 S. Ct. 485 (2023) .................................................. 9, 17

*United States v. Gartner*, 518 F.2d 633 (2d Cir. 1975) ...................................... 21

*United States v. Ginsberg*, 758 F.2d 823 (2d Cir. 1985) ..................................... 9

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) ...................................... 14, 15, 16

*United States v. Hari*, 67 F.4th 903 (8th Cir. 2023) .......................................... 9

*United States v. Hohn*, 606 F. App'x 902 (10th Cir. 2015) .............................. 3, 12

*United States v. Kelly*, 790 F.2d 130 (D.C. Cir. 1986) ........................................ 9

*United States v. Kennedy*, 225 F.3d 1187 (10th Cir. 2000) ................................. 18

*United States v. Lustyik*, 833 F.3d 1263 (10th Cir. 2016) .................................. 7, 10

*United States v. Mastroianni*, 749 F.2d 900 (1st Cir. 1984) ............................. 9, 17

*United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011) ........................................ 23

*United States v. Melvin*, 650 F.2d 641 (5th Cir. 1981) ..................................... 9, 20, 22

*United States v. Mitan*, 499 F. App'x 187 (3d Cir. 2012) ................................. 10

*United States v. Moore*, 2024 WL 1171120 (10th Cir. Mar. 19, 2024) ........................... 18

*United States v. Morrison*, 449 U.S. 361 (1981) .................................... 8, 9, 11, 12, 13, 16

*United States v. Orduno-Ramirez*, 61 F.4th 1263 (10th Cir.),
    *cert. denied*, 144 S. Ct. 388 (2023) ....................................... 5, 10, 15, 17, 18

*United States v. Singleton*, 52 F. App'x 456 (10th Cir. 2002) ........................... 18

*United States v. Spaeth*, 69 F.4th 1190 (10th Cir. 2023) ................................. 17, 18

*United States v. Steele*, 727 F.2d 580 (6th Cir. 1984) ...................................... 9

iv

*United States v. Webb*, No. 21-3091, 2022 WL 11493541 (10th Cir. Oct. 20, 2022) ........ 8

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) .......................................................... 19

*Weatherford v. Bursey*, 429 U.S. 545 (1977) .................. 7, 8, 11, 12, 14, 16, 19, 20, 21, 22

*Weaver v. Massachusetts*, 582 U.S. 286 (2017) ................................................... 14, 15, 16

*Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2004) ......................................................... 9

**Other Authorities**

Doc. 222, D. Kan. Case No. 14-cr-20065-JAR .................................................................. 25

Doc. 23, D. Kan. Case No. 19-cv-2491-JAR ................................................................... 25

## INTRODUCTION

*Shillinger v. Haworth*, 70 F.3d 1132 (10th Cir. 1995), is irreconcilable with Supreme Court precedent rejecting overbroad categorical Sixth Amendment rules. Yet for nearly five years, more than 100 defendants in a consolidated 28 U.S.C. § 2255 proceeding in the District of Kansas have used *Shillinger* to challenge their convictions and sentences. They assert Sixth Amendment violations based on government intrusions into attorney-client communications, but they acknowledge that the intrusions had no identifiable effect on their convictions or sentences. Instead, they rely on *Shillinger*'s rule that every purposeful and unjustified government intrusion into confidential attorney-client communications violates the Sixth Amendment per se and is structural error.

The consolidated claims are broad and varied. Some are based on recorded jail calls. Others on soundless surveillance videos. Some defendants claim a pre-plea intrusion, others post-plea, others pre-trial, and still others post-sentencing. Most received favorable charging and sentencing deals. *See* R.3.817. And in May 2017, the U.S. Attorney's Office adopted "a comprehensive policy . . . that is largely curative of many of the issues that" sparked the litigation. R.1.2847. Nevertheless, *Shillinger* has given life to more than 100 claims that would not have made it past the pleading stage in at least 10 other circuits, all while avoiding the facts of individual cases. Its rule is hardly "narrow."

*United States v. Hohn* is one of the consolidated cases. It concerns a single six-minute call that Steven Hohn chose to make on a monitored and recorded detention-facility telephone line, declining the option of making a private call. Contrary to Hohn's assertion, this case does not involve a "government intrusion of the grossest kind."

1

## SUPPLEMENTAL QUESTIONS PRESENTED

A.     Did *Shillinger v. Haworth*, 70 F.3d 1132 (10th Cir. 1995), correctly hold that it is structural error for the government to purposefully intrude without legitimate justification into the attorney-client relationship and that prejudice must be presumed?

B.     When, if ever, does the government unjustifiably intrude into the attorney-client relationship by intentionally obtaining attorney-client communications that are not privileged?

## STATEMENT OF THE CASE

In January 2012, Hohn was charged with conspiracy to distribute 50 grams or more of methamphetamine and possession of numerous firearms. R.1.29-30, 35-38. He was detained pending trial at a private detention facility in Leavenworth, Kansas, known as CCA, operated under contract with the U.S. Marshal Service. Supp.R.2.22, 25.

On April 23, 2012, Hohn called his new attorney from CCA, knowing the call would be monitored and recorded both for security at CCA and to protect the public. Supp.R.2.17-18, 21; Gov't Br. 5-9. He was warned in four ways that the call was monitored or recorded—in the Inmate Handbook, Supp.R.2.30; a consent-to-monitoring form, Supp.R.2.21; signs on and near the telephones, Supp.R.2.106-07; and an audible warning before outgoing calls, R.2.1039-40. Supp.R.2.17-18. Hohn acknowledges that he knew he could have placed a confidential call to his attorney, but he chose instead for his call to be monitored and recorded. R.2.1038-41; Supp.R.2.17-18.

In April 2012, law enforcement officers were investigating Hohn's involvement in the death and disappearance of Gregory Price. R.2.1128-43. They received reports that

Hohn had stuffed Price's body into a refrigerator and dumped it in a field, and that Hohn had threatened to kill any snitches. *Id.*; Supp.R.1.29-30. When the officers issued an administrative subpoena for Hohn's jail calls from between April 19 and 23, 2012, they obtained his April 23 call to his attorney. R.2.1750-51. The April 2012 subpoena was one of three requests for Hohn's jail calls. R.2.1750-52; Gov't Br. 10-14. And the April 23 call was the only attorney-client call the government obtained, R.2.1750-51; Hohn's other attorneys had privatized their numbers, so those calls were not recorded, R.2.551-52.

Hohn was convicted on all charges after a 12-day trial and sentenced to 360 months in prison. R.2.1731. This Court affirmed. *United States v. Hohn*, 606 F. App'x 902 (10th Cir. 2015) (unpublished). The evidence against Hohn was overwhelming. His co-conspirators "reached plea agreements . . . and testified against [him]." *Id.* at 904. They, along with "the law enforcement officers who investigated" Hohn, "described his participation in the alleged conspiracy; his possession, use, and distribution of methamphetamine; and his possession of firearms." *Id.*

In 2019, Hohn filed a § 2255 motion alleging that "the government [had] violated [his] Sixth Amendment right to counsel by obtaining protected attorney-client communications." R.1.2650. He requested dismissal of all charges with prejudice or, alternatively, a reduction of his sentence by 50%. *Id.* Hohn acknowledged that he had not identified any violation that had any effect on his conviction or sentence. *See* R.2.84; *see also* Supp.R.2.143, ¶ 28; Gov't Br. 14-15. Instead, he asserted that actual prejudice was irrelevant under *Shillinger*. R.1.2661-62; R.2.84.

The district court denied Hohn's § 2255 motion after an evidentiary hearing.

R.2.1729-83. It found that "Hohn . . . cannot demonstrate a realistic possibility of prejudice," R.1.1758, but concluded that he was not required to prove prejudice under *Shillinger*, R.2.1735, 1744. Although government counsel has been denied access to the April 23, 2012 call, R.2.1737-40, the district court listened to the call *in camera*, R.2.1754; found that it "relate[d] to legal advice or strategy," R.2.1754; and found that the prosecutor intentionally listened to it before trial (contrary to the prosecutor's sworn assertion), R.2.1775-79; R.3.549-50. The district court also found that Hohn reasonably believed that his attorney-client calls would be monitored and recorded; that he consented to such monitoring and recording; and that he voluntarily disclosed his attorney-client communications to CCA and the phone company; but that he did not subjectively know that the prosecutor or case agents could obtain the recordings. R.2.1745-49, 1765-67. The district court denied Hohn's § 2255 motion because he had no reasonable expectation that his April 23, 2012 call was confidential, and therefore the Sixth Amendment's protection did not apply to his call. R.2.1765-66. Alternatively, the district court found that Hohn knowingly and voluntarily waived the Sixth Amendment's protection against government intrusion. R.2.1768.

This Court granted Hohn a certificate of appealability on two issues: whether he had proven a Sixth Amendment violation and whether he waived his Sixth Amendment right to confidential attorney-client communications. After briefing and oral argument before a panel of this Court, this Court voted to hear and decide the case en banc in the first instance and ordered supplemental briefing on the two questions listed above.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's denial of Hohn's § 2255 motion, either by overruling *Shillinger*, or by holding that the Sixth Amendment does not protect Hohn's non-privileged April 23, 2012 call, or both.

A. *Shillinger* incorrectly determined that it is structural error for the government to purposefully intrude into the attorney-client relationship without legitimate justification and that prejudice must be presumed under those circumstances. That rule, which has little or no stare decisis weight, is irreconcilable with Supreme Court precedent and must be overruled. *Weatherford v. Bursey*, 429 U.S. 545 (1977), and *United States v. Morrison*, 449 U.S. 361 (1981), both reversed per se Sixth Amendment rules like *Shillinger*'s. *See United States v. Orduno-Ramirez*, 61 F.4th 1263, 1268 (10th Cir.), *cert. denied*, 144 S. Ct. 388 (2023). *Shillinger* falls outside the very narrow category of recognized per se Sixth Amendment violations. And none of the Supreme Court's rationales for classifying an error as structural support *Shillinger*'s outlier rule. At least 10 other circuits agree that Sixth Amendment government-intrusion claims require some showing of actual prejudice. Because Hohn has conceded he cannot prove prejudice, this Court should affirm the denial of his Sixth Amendment claim on that basis alone.

B. No special justification is required for the government to obtain and review nonprivileged attorney-client communications because such communications are not protected by the Sixth Amendment, particularly where, as here, the defendant has no reasonable expectation of confidentiality in those communications. The Sixth Amendment right to confidential attorney-client communication exists to foster candid

communication between attorney and client, so defendants can receive effective assistance of counsel and in turn a fair trial. Because that right shares the same purpose as the attorney-client privilege, nonprivileged communications are generally unprotected. At most, the Sixth Amendment protects attorney-client communications in which the defendant has a reasonable expectation of confidentiality. Here, Hohn had no such expectation. He reasonably believed that his April 23, 2012 call would be monitored and recorded. Under the circumstances, the Sixth Amendment does not protect his call.

## ARGUMENT

### A. *Shillinger* must be overruled.

*Shillinger*'s per se rule—that purposeful, unjustified government intrusion into confidential attorney-client communications is conclusively prejudicial structural error—is irreconcilable with Supreme Court precedent and must be overruled. "The Sixth Amendment recognizes the right to the assistance of counsel because it . . . is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). "Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *United States v. Cronic*, 466 U.S. 648, 658 (1984) (citing *Weatherford* and *Morrison*).

However *Shillinger*'s rule is characterized—as a per se rule, a conclusive presumption of prejudice, or a structural error rule—it violates *Weatherford* and *Morrison*, falls outside any recognized category of per se Sixth Amendment violation, and satisfies none of the three rationales for recognizing an error as structural. It is simply "too blunt an instrument to account for the legitimate demands of the adversarial system."

*United States v. Lustyik*, 833 F.3d 1263, 1268 (10th Cir. 2016).

        1.      ***Shillinger* is irreconcilable with *Weatherford* and *Morrison*.**

*Shillinger* must be overruled because it is contrary to *Weatherford* and *Morrison*, which rejected per se Sixth Amendment rules like *Shillinger*'s.

In *Weatherford*, an undercover agent attended the defendant's trial strategy meetings with defense counsel. 429 U.S. at 547-48. Under the Fourth Circuit's rule, "reversal and a new trial" were required "whenever the prosecution knowingly arrange[d] and permit[ted] intrusion into the attorney-client relationship." *Id.* at 549 (internal quotation marks omitted). The Supreme Court rejected that rule because it "cut[] much too broadly." *Id.* at 557. The Court explained that without "at least a realistic possibility of injury to [the defendant] or benefit to the State, there can be no Sixth Amendment violation." *Id.* at 558. Because there was "no tainted evidence," "no communication of defense strategy to the prosecution, and no purposeful intrusion by [the agent], there was no violation of the Sixth Amendment." *Id.*

*Shillinger* disregarded *Weatherford*'s caution against sweeping Sixth Amendment rules and incorrectly interpreted *Weatherford* as implicitly approving a version of the categorical rule it had rejected. *See Shillinger*, 70 F.3d at 1139-42. *Weatherford* recognized that the defendant "would have [had] a much stronger case" if the agent had testified at trial about the defendant's attorney-client communications, or if the prosecutor had "learned . . . the details of" the defendant's trial preparations, or if the "overheard conversations [had] been used in any other way to the substantial detriment of [the defendant]." 429 U.S. at 554. But it did not create a checklist for an alternative per se

rule. Instead, it focused the Sixth Amendment inquiry on whether the defendant has shown "a realistic possibility of injury to [himself] or benefit to the [government]" as a result of the government's intrusion into the attorney-client relationship. *Id.* at 558.

Just as the Fourth Circuit's per se rule in *Weatherford* cut much too broadly, so does *Shillinger*'s. Hohn attempts to re-brand *Shillinger* as "narrow," but the consolidated § 2255 litigation in Kansas belies that characterization. In that litigation, the Federal Public Defender (FPD) relied on *Shillinger* to assert that more than 100 defendants were entitled to dismissal of all charges, regardless of when or how the alleged intrusion occurred or whether the defendant was prejudiced. The FPD even claimed that *Shillinger* required dismissal of charges for post-sentencing intrusions. *See, e.g.*, *United States v. Webb*, No. 21-3091, 2022 WL 11493541, at *2 (10th Cir. Oct. 20, 2022) (unpublished). *Shillinger* elides these important case-specific features, untethering the judicial inquiry from the Sixth Amendment's grounding in the reliability of the trial process.

In *Morrison*, the Supreme Court rejected another per se Sixth Amendment rule. There, federal agents met with the defendant "without the knowledge or permission of her counsel," "disparaged" that counsel, and tried to get the defendant to cooperate in an investigation. 449 U.S. at 362. Under the Third Circuit's rule, dismissal of charges was required, regardless of "any tangible effect upon [the] representation." *Id.* at 363. The Supreme Court reversed. Even assuming a "deliberate" Sixth Amendment violation had occurred, *id.* at 364-65, the defendant had "demonstrated no prejudice of any kind . . . to the ability of her counsel to provide adequate representation," and therefore had "provide[d] no justification for interfering with the criminal proceedings," *id.* at 366-67.

*Shillinger* incorrectly read *Morrison* to suggest that *Weatherford*'s "prejudice requirement . . . does not necessarily govern intentional intrusions by the prosecution that lack a legitimate purpose." *Shillinger*, 70 F.3d at 1140. *Morrison* only "assume[d], without deciding, that the Sixth Amendment was violated." 449 U.S. at 364. And it foreclosed *Shillinger*'s structural error rule by holding that the assumed deliberate intrusion was harmless. *See id.* at 366-67. If *Shillinger* were correct that "intentional and groundless prosecutorial intrusions are never harmless," 70 F.3d at 1142, the Supreme Court would have vacated the defendant's conviction in *Morrison*. Instead, it allowed the defendant's conviction to stand, reiterating that "[t]he premise of [its] prior cases is that" infringement of the Sixth Amendment right to the assistance of counsel requires some actual or threatened "adverse effect upon the effectiveness of counsel's presentation or . . . some other prejudice to the defense." *Morrison*, 449 U.S. at 365.

After *Weatherford* and *Morrison*, nearly every other circuit has agreed that Sixth Amendment claims of government intrusion into the attorney-client relationship require a showing of prejudice.[1] The only exception is the Third Circuit's decision in *United States v. Levy*, 577 F.3d 200 (3d Cir. 1978), on which both *Shillinger* and Hohn rely. But even

---

[1] *See, e.g.*, *United States v. Mastroianni*, 749 F.2d 900, 906-08 (1st Cir. 1984); *United States v. Ginsberg*, 758 F.2d 823, 833 (2d Cir. 1985); *United States v. Allen*, 491 F.3d 178, 192 (4th Cir. 2007); *United States v. Melvin*, 650 F.2d 641, 643-44 (5th Cir. 1981); *United States v. Steele*, 727 F.2d 580, 585-87 (6th Cir. 1984); *United States v. Castor*, 937 F.2d 293, 297-98 (7th Cir. 1991); *United States v. Hari*, 67 F.4th 903, 912-13 (8th Cir. 2023); *Williams v. Woodford*, 384 F.3d 567, 584-85 (9th Cir. 2004); *United States v. Danielson*, 325 F.3d 1054, 1068-70 (9th Cir. 2003); *United States v. Esformes*, 60 F.4th 621, 632-33 (11th Cir.), *cert. denied.*, 144 S. Ct. 485 (2023); *United States v. Kelly*, 790 F.2d 130, 136-38 (D.C. Cir. 1986).

the Third Circuit has observed that *Levy* was "called into question" by *Morrison*. *United States v. Mitan*, 499 F. App'x 187, 192-93 & n.6 (3d Cir. 2012) (unpublished).

> ## 2. *Shillinger* contravenes the Supreme Court's general disapproval of per se Sixth Amendment rules.

*Shillinger* also improperly disregarded the Supreme Court's general "caution against Sixth Amendment per se prejudice rules." *See Orduno-Ramirez*, 61 F.4th at 1275. This Court recently heeded that caution and declined to extend *Shillinger* to the sentencing context. *Id.* Respect for the Supreme Court's disapproval of "overinclusive per se prejudice rule[s]," *id.*, also requires overruling *Shillinger*.

"[T]o prove a Sixth Amendment violation, a defendant must normally demonstrate . . . prejudice." *Id.* at 1267; *accord Cronic*, 466 U.S. at 658. The Supreme Court has entirely excused a defendant from showing prejudice only in a few "extreme situations" not present in this case. *See Orduno-Ramirez*, 61 F.4th at 1268. Those situations are—(1) actual denial of counsel; (2) constructive denial of counsel, when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when "the likelihood that any lawyer . . . could provide effective assistance is so small that a presumption of prejudice is appropriate." *Cronic*, 466 U.S. at 659-60; *accord Lustyik*, 833 F.3d at 1269.

The Supreme Court has found actual denial of counsel where a court or statute "'interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense.'" *Perry v. Leeke*, 488 U.S. 272, 279-80 (1989) (quoting *Strickland*, 466 U.S. at 686); *accord Cronic*, 466 U.S. at 659 n.25. Such

interference includes prohibiting a defendant from consulting with his attorney during a regular overnight recess that occurred when the defendant was testifying, *Geders v. United States*, 425 U.S. 80 (1976); denying defense counsel's request to make closing argument, *Herring v. New York*, 422 U.S. 853 (1975); restricting defense counsel's right to decide whether and when the defendant should testify, *Brooks v. Tennessee*, 406 U.S. 605 (1972); and prohibiting defense counsel from eliciting testimony from the defendant through direct examination, *Ferguson v. Georgia*, 365 U.S. 570 (1961).

*Shillinger* incorrectly relied on these government-interference cases in two ways. First, it adopted the faulty legal premise that any "direct state interference with the exercise of a fundamental right" is a per se Sixth Amendment violation. *Shillinger*, 70 F.3d at 1141-42 (internal quotation marks omitted). Both *Weatherford* and *Morrison* involved direct government interference with the defendant's attorney-client relationship, yet the Supreme Court found that neither interference warranted a per se rule. *See Weatherford*, 429 U.S. at 557-59; *Morrison*, 449 U.S. at 364-67; *see also, e.g.*, *Perry*, 488 U.S. at 280-85 (distinguishing *Geders*).

Second, the types of government interference that have been recognized as violating the Sixth Amendment per se bear no resemblance to a government intrusion into attorney-client communications. In the government-intrusion cases *Shillinger* relied on, a court or statute directly tied defense counsel's hands or commandeered defense strategy. By contrast, a purposeful and unjustified government intrusion into a defendant's confidential attorney-client communications would not necessarily render the attorney totally absent, dictate defense strategy, or prevent the attorney from assisting the

defendant during trial. *See, e.g.*, *Shillinger*, 70 F.3d at 1134-36 (describing defense counsel's unencumbered advocacy); *Hohn*, 606 F. App'x at 904 (listing the numerous motions and challenges defense counsel deployed as part of his defense strategy). Rather, Sixth Amendment government-intrusion claims like Hohn's relate to the "right to the effective assistance of counsel." *Weatherford*, 429 U.S. at 547; *see Morrison*, 449 U.S. at 363 (focusing on "assur[ing] the defendant the effective assistance of counsel and a fair trial"). To be sure, purposeful and unjustified government intrusions may be prejudicial, but the question of prejudice should be determined on a case-by-case basis. *See, e.g.*, *Perry*, 488 U.S. 284-85; *Morrison*, 449 U.S. at 365-66; *Weatherford*, 429 U.S. at 557-58.

*Shillinger* also incorrectly held that case-by-case inquiry into prejudice is not worth the cost in cases of purposeful and unjustified government intrusions. 70 F.3d at 1142. The facts of *Shillinger* and Hohn's criminal case demonstrate that the legally required case-by-case approach is not unduly burdensome. In *Shillinger*, both the district court and this Court readily concluded that the defendant was prejudiced by the prosecutor's intrusion. *See id.* at 1139. Here, Hohn acknowledges that he "has not alleged individual prejudice," R.2.84, and he has repeatedly declined to identify any actual prejudice when asked to do so, *see, e.g.*, Supp.R.2.59, ¶ 24; Supp.R.2.143, ¶ 28. Indeed, Hohn's April 23, 2012 call was just six minutes long, took place more than a year before trial, and occurred before Hohn received discovery from the government. R.2.1037-38, 1754. At Hohn's 12-day trial, the government presented overwhelming evidence of his guilt. *See* R.2.1731. On these facts, a court could easily find that Hohn was not prejudiced. A per se rule that would nevertheless conclusively presume a Sixth

Amendment violation on these facts has no basis in the Sixth Amendment's assistance-of-counsel guarantee. *See Cronic*, 466 U.S. at 658.

Nor does *Shillinger*'s deterrence rationale withstand scrutiny. The purpose of the Sixth Amendment right to the assistance of counsel is not to detect and deter government misconduct; its purpose is to ensure the fairness of criminal proceedings. *See Cronic*, 466 U.S. at 658-60, 662 n.31. In *Morrison*, the Court's conclusion that no remedy was warranted even though it assumed a deliberate Sixth Amendment violation indicates that a presumption of prejudice is not necessary to deter government misconduct. *See* 449 U.S. at 365-66. And Hohn has not identified any widespread pattern of government misconduct in the other circuits that require a showing of actual prejudice.

Hohn's argument that *Shillinger* finds support in the line of Supreme Court cases "involv[ing] communications between a counseled defendant and a government informant or agent," Supp. Br. 11, is wrong. Those cases do not conclusively presume prejudice and structural error, as *Shillinger* does. They apply a narrowly tailored exclusionary rule that precludes the government from introducing in its case in chief statements that it obtained from the defendant in violation of his Sixth Amendment right to have counsel present when the government deliberately elicits statements related to pending charges. *See, e.g.*, *Maine v. Moulton*, 474 U.S. 159, 179-80 (1985); *Kansas v. Ventris*, 556 U.S. 586, 594 (2009). And failure to exclude such statements is reviewable for harmless error. *See, e.g.*, *Milton v. Wainwright*, 407 U.S. 371, 377-78 (1972).

Nor do *Black v. United States*, 385 U.S. 26 (1966), *O'Brien v. United States*, 386 U.S. 345 (1967), or *Hoffa v. United States*, 385 U.S. 293 (1966), provide any support for

*Shillinger. Contra* Supp. Br. 9, 11. "[T]hese cases" do not "require or suggest" a per se Sixth Amendment rule that eliminates a defendant's burden of proving prejudice. *Weatherford*, 429 U.S. at 550-51. The most that could be "inferred from [*Black* and *O'Brien*] . . . is that when conversations with counsel have been overheard, the constitutionality of the conviction depends on whether the overheard conversations have produced . . . any of the evidence offered at trial." *Id.* at 552. That "is a far cry from" *Shillinger*'s "per se rule." *Id.* As for *Hoffa*, "the Court did not hold that the Sixth Amendment right to counsel subsumes a right to be free from intrusion by informers into counsel-client consultations." *Id.* at 553. "The Court merely assumed, without deciding" several aspects of the defendant's claim "and then held that [his] assumed Sixth Amendment rights had not been violated because the informer's testimony at the jury-tampering trial did not touch upon the overheard conversations with counsel[.]" *Id.*

### 3. The Supreme Court's rationales for recognizing structural errors do not support *Shillinger*.

Structural errors are errors that "'defy analysis by "harmless-error" standards' because they 'affec[t] the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49 (2006) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991)). None of the Supreme Court's "rationales for finding an error to be structural" supports *Shillinger*'s structural error rule. *See Weaver v. Massachusetts*, 582 U.S. 286, 295-96 (2017).

First, structural errors implicate rights that are "not designed to protect the defendant from erroneous conviction but instead protect[] some other interest." *Id.* at 295.

Structural errors in the Sixth Amendment assistance-of-counsel context include the denial of counsel altogether, *see Gonzalez-Lopez*, 548 U.S. at 148-49 (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)), and various infringements on a defendant's right to conduct his own defense, such as denial of the right to counsel of choice, *id.*; denial of the right of self-representation, *McKaskle v. Wiggins*, 465 U.S. 168, 177-78 (1984); and an attorney's "admission of a client's guilt over the client's express objection," *McCoy v. Louisiana*, 584 U.S. 414, 427-28 (2018). By contrast, a defendant's right to confidential attorney-client communications free from government intrusion, like the right to effective assistance of counsel generally, "is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *See Cronic*, 466 U.S. at 658 (relying on *Weatherford* and *Morrison*). It does not protect any other interest.

The second rationale is that "the effects of the error are simply too hard to measure." *Weaver*, 582 U.S. at 295. But this Court has had no problem measuring prejudice in government-intrusion cases. *See, e.g.*, *Shillinger*, 70 F.3d at 1139 (agreeing with the district court's finding of prejudice); *Orduno-Ramirez*, 61 F.4th at 1276-77 (agreeing with the district court's finding of no prejudice). And Hohn has not identified any problem measuring prejudice in the 10 other circuits that require it. In addition, this Court routinely assesses the prejudicial effect of defense counsel's performance under *Strickland*, often choosing to reject ineffective assistance of counsel claims on the prejudice prong of the inquiry because it is "easier" than assessing defense counsel's performance. *See* 466 U.S. at 697; *see, e.g.*, *United States v. Dominguez*, 998 F.3d 1094, 1110-11 (10th Cir. 2021). There is no reason to believe that assessing prejudice resulting

from a government intrusion is any more difficult. *See Weatherford*, 429 U.S. at 547 (asking whether the government intrusion "deprived [the defendant] of his right to the effective assistance of counsel").

Hohn's argument that it will be "almost impossible" for the government to show that a purposeful, unjustified intrusion is harmless beyond a reasonable doubt is misplaced. Supp. Br. 5-6 (internal quotation marks omitted). The *Chapman v. California*, 386 U.S. 18 (1967), harmless-error standard on which Hohn relies, "presumes a constitutional violation, whereas" this Court is "seek[ing] to define one." *See Premo v. Moore*, 562 U.S. 115, 128 (2011). The defendant's burden of proving prejudice as part of an assistance-of-counsel claim "stems from the very definition of the right at issue; it is not a matter of showing that the violation was harmless, but of showing that a violation of the right to effective representation *occurred*." *Gonzalez-Lopez*, 548 U.S. at 150.[2]

The third rationale for finding that an error is structural is that "the error always results in fundamental unfairness." *Weaver*, 582 U.S. at 296. It is well-established that not every purposeful, unjustified government intrusion into a defendant's attorney-client relationship results in unfairness. For example, the deliberate intrusion in *Morrison* did not result in unfairness. 449 U.S. at 365 & n.2. And the Supreme Court has found harmless error even when the government uses at trial incriminating statements that it

---

[2] In no circumstance would *Chapman* apply to the Sixth Amendment claim in Hohn's § 2255 motion. Rather, *Brecht v. Abrahamson*, 507 U.S. 619 (1993), would require Hohn to prove that any Sixth Amendment violation "had a 'substantial and injurious effect or influence' on the outcome of his trial." *Brown v. Davenport*, 596 U.S. 118, 126 (2022) (quoting *Brecht*, 507 U.S. at 637); *accord id.* at 132-33.

obtained from the defendant in violation of his Sixth Amendment right to the assistance of counsel. *Milton*, 407 U.S. at 372.

Hohn argues, more specifically, that a prosecutor becoming privy to attorney-client communications about legal advice or defense strategy "inevitably signal[s] fundamental unfairness." Supp. Br. 18 (internal quotation marks omitted). But that assertion is unfounded. This Court recently rejected similar arguments in declining to apply *Shillinger* in the guilty-plea and sentencing contexts. *See United States v. Spaeth*, 69 F.4th 1190, 1211 (10th Cir. 2023); *Orduno-Ramirez*, 61 F.4th at 1273-75. And other circuits have recognized that such intrusions are not inevitably unfair. *See, e.g.*, *Esformes*, 60 F.4th at 632-33 (concluding that "privilege violations did not prejudice [the defendant]"); *Allen*, 491 F.3d at 192 (finding no prejudice where defense counsel was required to give the government a document containing notes for cross-examining a key government witness); *Mastroianni*, 749 F.2d at 906-08 (noting that sometimes "the revelation of confidential communications by [an] informant is harmless").

Nor is there any signal of unfairness in this case. Hohn's Sixth Amendment claim is based on one six-minute call that took place more than a year before his trial at which the government presented overwhelming evidence of his guilt. R.2.1037-38, 1731, 1754. And Hohn concedes he has not alleged actual prejudice. Perhaps even more telling is that the more than 100 other defendants who filed related § 2255 motions made similar concessions. *See, e.g.*, *In re CCA Recordings 2255 Litig.*, No. 19-cv-2491-JAR, 2021 WL 5868517, at *6 (D. Kan. Dec. 10, 2021). Rather than signaling fundamental unfairness, these cases signal that *Shillinger*'s per se prejudice rule is "overinclusive compared to

determining prejudice on a case-by-case basis." *See Orduno-Ramirez*, 61 F.4th at 1275 n.20 (ellipsis and internal quotation marks omitted).

#### 4. *Shillinger* carries little or no stare decisis weight.

*Shillinger* carries little or no stare decisis weight because it is dictum this Court has declined to apply. Hohn's argument that "this Court should reaffirm" *Shillinger* because it "has been binding precedent . . . for 30 years," Supp. Br. 23, is misplaced.

At the outset of its analysis, *Shillinger* held that *Weatherford*'s "prejudice standard . . . ha[d] been met." *Shillinger*, 70 F.3d at 1139. The rest of the opinion, which went on to "fashion" a new rule, *id.* at 1141-42, was not "essential to the determination of the case," and therefore is not controlling. *See United States v. Moore*, 2024 WL 1171120, at *6 (10th Cir. Mar. 19, 2024) (internal quotation marks omitted). Moreover, when this Court has confronted *Shillinger*, it has found ways to avoid applying its prejudice rule. *See, e.g.*, *Spaeth*, 69 F.4th at 1211 (declining to apply *Shillinger* in the guilty plea context; suggesting that *Shillinger* is limited to use of "attorney-client communications against the defendant at trial"); *Orduno-Ramirez*, 61 F.4th at 1273; *United States v. Singleton*, 52 F. App'x 456, 459-60 (10th Cir. 2002) (unpublished) (assuming a *Shillinger* violation but holding that no judicial remedy was warranted); *United States v. Kennedy*, 225 F.3d 1187, 1195 n.5 (10th Cir. 2000) (suggesting that *Shillinger* applies "only where 'the evidence has been wrongfully admitted'" (quoting *Shillinger*, 70 F.3d at 1143)).

It appears this Court has never relied on *Shillinger*'s per se structural error rule to decide a case. The time has come to overrule it.

**B.**    **The Sixth Amendment's protection against government intrusion into attorney-client communications generally applies only to privileged communications, and certainly does not protect communications in which a defendant has no reasonable expectation of confidentiality.**

The Sixth Amendment right to the assistance of counsel includes a qualified right to confidential attorney-client communications that generally covers only privileged attorney-client communications. However, as in *Weatherford*, this Court need not hold that every non-privileged attorney-client communication is unprotected by the Sixth Amendment. It is sufficient to hold that when a defendant has no reasonable expectation that his attorney-client communications are private, the Sixth Amendment does not protect them against government intrusion. No special justification is required for the government to obtain and review such communications.

**1.**    **The Sixth Amendment's protection against government intrusion into attorney-client communications is generally co-extensive with the attorney-client privilege.**

In *Weatherford*, the Supreme Court described the scope of the Sixth Amendment's protection of attorney-client communications by reference to the attorney-client privilege, suggesting the two were generally co-extensive given their shared purpose of enabling effective representation. 429 U.S. at 554 n.4. As the Court observed, the "purpose of the [attorney-client] privilege is to encourage confidential disclosures by a client to an attorney," *id.*, "thereby promot[ing] broader public interests in the observance of law and administration of justice," *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). *Accord In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006). Likewise, the Sixth Amendment right to the assistance of counsel "is recognized not for its own sake,

but because of the effect it has on the ability of the accused to receive a fair trial." *Cronic*, 466 U.S. at 658 (relying on *Weatherford* and *Morrison*); *see Geders* 425 U.S. at 88.

Drawing support from the law of attorney-client privilege, *Weatherford* observed that "attorney-client communications in the presence of a third party not the agent of either are generally not protected by the [attorney-client] privilege." 429 U.S. at 554 n.4. Similarly, *Weatherford* reasoned, a government intrusion into the attorney-client relationship is less likely to implicate the Sixth Amendment right to the assistance of counsel when the "intrusion may be avoided by excluding third parties from defense meetings or refraining from divulging defense strategy when third parties are present at those meetings." *Id.* Such an intrusion is less likely to "inhibit" or "chill" attorney-client communications, and therefore less likely to implicate the effectiveness of counsel's assistance or the fairness of trial. *See id.* The clear implication is that such nonprivileged communications are generally not protected by the Sixth Amendment. *See id.* After all, "the traditional sanctity of the attorney-client relationship, characterized by the confidentiality of communications between the attorney and client, is precisely what" defendants seek "to vindicate as against government intrusions." *Melvin*, 650 F.2d at 645.

2. **To the extent the Sixth Amendment protects non-privileged communications, it protects only those in which the defendant has a reasonable expectation of confidentiality.**

This Court need not adopt an inflexible categorical rule that the Sixth Amendment protects only privileged attorney-client communications. This Court need only hold that, to the extent the Sixth Amendment right to the assistance of counsel protects non-privileged communications, it protects only those communications in which the

defendant has a reasonable expectation of confidentiality. Extending the Sixth Amendment's protection beyond that—to factually non-confidential communications, as Hohn advocates (Br. 47)—would improperly divorce the protection from its purpose of ensuring a fair trial through meaningful implementation of the assistance-of-counsel guarantee. *See Weatherford*, 429 U.S. at 547, 554 & n.4.

*Weatherford* provides a blueprint for this approach. On the one hand, the Court described the Sixth Amendment's protection by reference to the attorney-client privilege. *Id.* On the other, the Court declined to agree with the government's position that "whenever a defendant converses with his counsel in the presence of a third party thought to be a confederate and ally, the defendant assumes the risk and cannot complain if the third party turns out to be an informer for the government who has reported on the conversations to the prosecution." *Id.* at 554. However, *Weatherford* made clear that defendants bear some responsibility to ensure the confidentiality of their attorney-client communications by, for example, "excluding third parties from defense meetings or refraining from divulging defense strategy when third parties are present at those meetings." *Id.* at 554 n.4. Thus, there is "a sharp distinction between" truly surreptitious government intrusions, which are difficult to detect and avoid, and intrusions the defendant and his attorney accept by inviting a third person into their conversations. *United States v. Gartner*, 518 F.2d 633, 636 (2d Cir. 1975). When a defendant, with "eyes open," takes "the risk that [a] suspected colleague might be" cooperating with the government and "wired for sound," there is "no actual intrusion upon the confidential attorney-client relationship." *Id.* at 637-38.

In other words, the Sixth Amendment protects an attorney-client communication from government intrusion only if the communication was "intended to remain confidential and was made under such circumstances that it was reasonably expected and understood to be confidential." *Melvin*, 650 F.2d at 645. When a defendant's attorney-client communications occur "in the presence of a person who has not joined the defense team, and with respect to whom there is no reasonable expectation of confidentiality," the Sixth Amendment does not protect them. *Id.* at 646; *accord United States v. Bell*, 776 F.2d 965, 972 (11th Cir. 1985).

A defendant must take reasonable steps to ensure the confidentiality of his attorney-client communications and must have a reasonable expectation of confidentiality in those communications for the Sixth Amendment's protection against government intrusion to apply. This standard sufficiently protects a defendant's attorney-client communications consistent with the purpose of the Sixth Amendment assistance-of-counsel-guarantee—to encourage attorney-client communications that would not have been made absent the protection from intrusion. *See Weatherford*, 429 U.S. at 554 n.4.

> **3. The Sixth Amendment does not protect Hohn's call because it was not privileged and he had no reasonable expectation of confidentiality.**

Hohn's April 23, 2012 call is a clear example of the sort of attorney-client communication the Sixth Amendment does not protect. The facts of this case invite a straightforward application of the rules discussed above. First, Hohn concedes that his April 23, 2012 call was not privileged. Supp. Br. 7. Second, Hohn deliberately chose to talk with his attorney in the presence of an adverse third party, not a confederate or ally.

Hohn reasonably understood that his call would be recorded and could be used both for institutional "security . . . and to protect the public." Supp.R.2.21; Gov't Br. 5, 8. So it was clear that "unsympathetic third part[ies]" were "listening in." *United States v. Mejia*, 655 F.3d 126, 132-34 (2d Cir. 2011). Hohn also reasonably understood that he could make a private call to his attorney, yet he chose not to do so. R.2.1038-41; Supp.R.2.17-18. Accordingly, the district court found that Hohn had no reasonable expectation of confidentiality, R.2.1765-66, and that finding was not clearly erroneous, *see* Gov't Br. 48. Hohn therefore assumed the obvious risk that the prosecution could obtain the call.

Hohn's assertion that this case involves "government intrusion of the grossest kind," Supp. Br. 1, 10, 21, 25 (quoting *Hoffa*, 385 U.S. at 306), is wrong. *Hoffa*'s comment about the "grossest" of government intrusions was directed at surreptitious government invasion of the defense camp, not a defendant's choice to accept adverse third parties into his phone conversations with counsel, as happened here. *See* 385 U.S. at 306-07. There is nothing unfair or unduly burdensome about requiring Hohn to take reasonable available steps to protect the confidentiality of his attorney-client call.

### 4. Hohn's remaining arguments about confidentiality, waiver, and *Shillinger* are without merit.

Hohn's contrived argument that *all* attorney-client communications relating to legal advice or strategy are "inherently" confidential for Sixth Amendment purposes, even though they are not "factually" confidential, Br. 47, is contrary to *Weatherford* and unfounded. *See* Gov't Br. 39-40. It rests on the untenable premise that the phrase, "*confidential* communications," includes factually *non*-confidential communications. Br.

47 (emphasis added). According to that rationale, the Sixth Amendment would protect *any* attorney-client communication, regardless of the circumstances, whether the communication took place in a hotel lobby, at a large public gathering, in a crowded hallway in a courthouse, in a courtroom, while the defendant was being transported by law enforcement, or in the presence of a suspected government informant.

Hohn's assertion (Supp. Br. 25) that he did not waive his right to confidential attorney-client communications by choosing a recorded call instead of a private one is meritless too, as explained more fully at pages 50-57 of the government's response brief. *See also Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).

In an apparent attempt to make his position more palatable, Hohn's supplemental brief makes a number of concessions that conflict with earlier positions he and the FPD have taken in the CCA-related consolidated § 2255 litigation. For example, Hohn now concedes that the government does not violate the Sixth Amendment if it "merely . . . 'obtain[s]'" a defendant's attorney-client communications. Supp. Br. 24. Yet his § 2255 motion claims that "the government violated [his] Sixth Amendment right to counsel by obtaining protected attorney-client communications." R.1.2650; *accord* R.1.2661-62; *see* R.2.89 (signaling his shift in position to avoid procedural default).

Hohn now concedes that "the government's mere possession of a batch of jail calls . . . that happen to include some attorney-client calls" would not violate the Sixth Amendment. Supp. Br. 24. Yet he previously opposed returning even his *non*-attorney jail calls to the government. *See, e.g.*, R.2.221. And the FPD has taken the position that the government violates the Sixth Amendment by merely possessing ("procuring and

24

retaining") a disc of jail calls that happens to contain attorney-client calls, Doc. 222 at 14-15, D. Kan. Case No. 14-cr-20065-JAR, even when the "procurement . . . may appear inadvertent," *id.* at 18. *See* 1.R.2821-23.

Hohn now argues that "*Shillinger* . . . allows for properly supervised 'filter teams.'" Supp. Br. 24-25. Yet the FPD, in its words, "has consistently maintained that resort to a taint team is a *per se* intentional intrusion into the defendant's Sixth Amendment rights." Doc. 23 at 11, D. Kan. Case No. 19-cv-2491-JAR (citation and internal quotation marks omitted; emphasis in original).

And Hohn now argues that his "position would . . . permit the government to subpoena jail calls for law-enforcement purposes, such as to investigate other crimes." Supp. Br. 24. But not in this case. *See id.*

Hohn's about-face on *Shillinger*'s scope and effect undermines his repeated assertions that *Shillinger* is "narrow." Supp. Br. 5, 6, 11, 17, 21, 23, 24. The last five years of litigation in this matter and the related cases underscore what the Supreme Court understood in *Weatherford* and *Morrison*—that categorical rules like *Shillinger*'s are subject to considerable overapplication. The narrower version of *Shillinger* that Hohn belatedly advocates is no different; it cuts much too broadly and is irreconcilable with Supreme Court precedent. *Shillinger* must be overruled.

## <u>CONCLUSION</u>

This Court should affirm the district court's denial of Hohn's § 2255 motion.

Respectfully submitted,

KATE E. BRUBACHER
United States Attorney
District of Kansas

s/ *James A. Brown*
JAMES A. BROWN

Assistant United States Attorney
Federal Building, Suite 290
444 SE Quincy
Topeka, KS  66683-3592
Telephone: (785) 295-2850
E-mail: James.Brown2@usdoj.gov

Attorney for Plaintiff-Appellee
the United States of America

## CERTIFICATE OF COMPLIANCE

This brief complies with this Court's January 31, 2024 Order, the typeface requirements of Fed. R. App. P. 32(a)(5) and 10th Cir. R. 32(A), and type style requirements of Fed. R. App. P. 32(a)(6). It is 25 pages in length, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), and has been prepared in a proportionally spaced typeface, 13-point Times New Roman, using Microsoft Word for Microsoft 365.

## CERTIFICATE OF SERVICE

I certify that on April 1, 2024, I caused the foregoing to be electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the Court's CM/ECF system. Because Defendant-Appellant's counsel are registered CM/ECF users, they will be served by the CM/ECF system upon electronic filing. *See* 10th Cir. R. 31.5. I also certify that I will cause 16 hard copies to be mailed to the Clerk's Office within three business days.

s/ *James A. Brown*
JAMES A. BROWN
Assistant United States Attorney